**In re PETITION TO INSPECT AND COPY GRAND JURY MATERIALS.**
**Appeal of Honorable Alcee L. HASTINGS, Appellant.**

No. 84–5003.

United States Court of Appeals,
Eleventh Circuit.

June 20, 1984.

As Amended on Denial of Rehearing
Aug. 3, 1984.

**23.** *Goodwin v. Balkcom,* 684 F.2d 794, 805 (11th Cir.1982).

Terence J. Anderson, Robert S. Catz, School of Law, University of Miami, Coral Gables, Fla., for appellant Judge Hastings.

John Doar, New York City, G. Stewart Webb, Baltimore, Md., for the appellee Investigating Committee.

Robert I. Richter, Reid H. Weingarten, Public Integrity Section, Criminal Div., Dept. of Justice, Washington, D.C., for appellee United States.

Before CAMPBELL\*, Chief Judge, PELL\*\* and KEARSE\*\*\*, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge:

This is an appeal by Judge Alcee Hastings, a district judge for the United States District Court for the Southern District of Florida, from an order of the District Court for the Southern District of Florida (Gordon, J., sitting by designation). The order allows the Investigating Committee of the Judicial Council of the Eleventh Circuit (the "Committee"), to inspect the records of a federal grand jury proceeding which had returned a criminal indictment against Judge Hastings leading to his trial and acquittal.

The indictment had charged Judge Hastings with soliciting a bribe in exchange for a judicial decision. The indictment had also charged one William Borders, Jr., with offering the bribe. Each accused was separately tried. Borders was convicted, and his conviction was affirmed on appeal. *United States v. Borders*, 693 F.2d 1318 (11th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983). Judge Hastings was then tried; he was acquitted. Less than two months later, two of three district judges belonging to the Judicial Council of the Eleventh Circuit (the "Council") filed a complaint with the Council against Judge Hastings asking that he be disciplined pursuant to the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, § 3(a) (the "Act"). 28 U.S.C. § 372(c). Citing to the same matters for which Judge Hastings had been tried and acquitted, the complaint charged that his conduct, including his trial testimony, demonstrated that he had violated the Code of Judicial Conduct. Complainants asked the Council to make such orders as were necessary "to vindicate the Honor of United States Judges and discipline [Judge Hastings] for his odious behavior," including recommending to the House of Representatives that he be impeached.

Chief Judge Godbold of the Eleventh Circuit appointed himself and four other judges (including the circuit judge who had written the court's opinion in Borders's un-

---

\* Honorable Levin H. Campbell, Chief Judge for the U.S. Court of Appeals for the First Circuit, sitting by designation.

\*\* Honorable Wilbur F. Pell, Jr., U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

\*\*\* Honorable Amalya Lyle Kearse, U.S. Circuit Judge for the Second Circuit, sitting by designation.

successful appeal) to a special committee to investigate the complaint as provided for in section 372(c)(4) of the Act.[1]

The Committee then filed a petition with the District Court for the Southern District of Florida seeking access to the records of the grand jury that had indicted Judge Hastings. In its petition the Committee alleged that,

> As part of its investigation of the facts and allegations of the complaint filed against Judge Hastings, the Committee has determined that it must examine the record, transcript, minutes and exhibits of the proceedings of the grand jury that indicted Judge Hastings and Mr. Borders.
>
> . . .
>
> The Committee is required by statute to conduct and maintain its proceedings in confidence. 28 U.S.C. § 372(c)(14).[2]

The Justice Department's Public Integrity Section responded in support of the Committee's petition. Judge Hastings filed an answer and affirmative defenses in opposition to the petition, as well as a cross-peti-

tion for public disclosure of the grand jury records. A newspaper, The Miami Herald, also petitioned for public release of the records.

At a hearing on the petition, Judge Hastings vigorously opposed any disclosure. He contended that the Committee's petition was in furtherance of a conspiracy to deprive him of his constitutional rights and that it was motivated by a desire to retaliate against him for having exercised his constitutional rights at his criminal trial. He asserted that once acquitted he should not be subjected to a judicial investigation which can only undermine his Article III independence. Further, Judge Hastings argued that the Committee's petition was unlawful under the Act and that the disclosure of the grand jury records was not permitted by Fed.R.Crim.P. 6(e), governing grand jury secrecy.

The district court issued a memorandum opinion rejecting Judge Hastings's arguments and stating that it would grant the Committee access to the grand jury materials but would deny public disclosure. *In re*

---

1. Paragraphs (3), (4) and (5) of subsection 372(c) govern the initial handling of complaints:

 (3) After expeditiously reviewing a complaint, the chief judge, by written order stating his reasons, may—
 (A) dismiss the complaint, if he finds it to be (i) not in conformity with paragraph (1) of this subsection, (ii) directly related to the merits of a decision or procedural ruling, or (iii) frivolous; or
 (B) conclude the proceeding if he finds that appropriate corrective action has been taken.
 The chief judge shall transmit copies of his written order to the complainant and to the judge or magistrate whose conduct is the subject of the complaint.
 (4) If the chief judge does not enter an order under paragraph (3) of this subsection, such judge shall promptly—
 (A) appoint himself and equal numbers of circuit and district judges of the circuit to a special committee to investigate the facts and allegations contained in the complaint;
 (B) certify the complaint and any other documents pertaining thereto to each member of such committee; and
 (C) provide written notice to the complainant and the judge or magistrate whose conduct is the subject of the complaint of the action taken under this paragraph.

 (5) Each committee appointed under paragraph (4) of this subsection shall conduct an investigation as extensive as it considers necessary, and shall expeditiously file a comprehensive written report thereon with the judicial council of the circuit. Such report shall present both the findings of the investigation and the committee's recommendations for necessary and appropriate action by the judicial council of the circuit.

2. Section 372(c)(14) provides:

 (14) All papers, documents, and records of proceedings related to investigations conducted under this subsection shall be confidential and shall not be disclosed by any person in any proceeding unless—
 (A) the judicial council of the circuit, the Judicial Conference of the United States, or the Senate or the House of Representatives by resolution, releases any such material which is believed necessary to an impeachment investigation or trial of a judge under article I of the Constitution; or
 (B) authorized in writing by the judge or magistrate who is the subject of the complaint and by the chief judge of the circuit, the Chief Justice, or the chairman of the standing committee established under section 331 of this title.

*Petition to Inspect Grand Jury Materials,* 576 F.Supp. 1275 (D.Fla.1983). The court asserted that Rule 6(e) did not provide the exclusive basis for releasing grand jury materials. Rather, the court was of the opinion that it could order disclosure under its inherent power as supervisor of the grand jury if, in the interests of justice, the Committee's need outweighed the important and long-established policy of grand jury secrecy. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–1673, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82, 78 S.Ct. 983, 985–986, 2 L.Ed.2d 1077 (1958). The district court struck the balance in favor of disclosure:

> [I]t is this Court's duty to balance the need for effective administration of the Congressionally established procedure for judicial self-discipline against the traditional factors favoring the " 'indispensable secrecy of [the] grand jury proceedings.' " [Citations omitted.] A careful evaluation of these competing concerns leads this Court to the inescapable conclusion that the minimal trespass upon the traditional values associated with grand jury confidentiality is significantly outweighed by the need of the Special Committee to examine the grand jury material and expeditiously execute its Congressional duty, thereby furthering the broad purposes of the Act.

576 F.Supp. at 1281.

Recognizing the need to minimize the breach of secrecy, the district court, in its accompanying order, imposed restrictions as to the time and conditions of access. It provided that,

1) access is permitted for a period of ninety days;

2) the records are to be kept in the office of the United States Attorney for the Southern District of Florida;

3) only the five members of the Committee, their counsel, and one secretarial assistant are permitted to view the records;

4) no reproduction is permitted except for single copies of records necessary to supplement the Committee's report, which must be kept under seal except before the Judicial Council;

5) the members of the Committee, their counsel, and the secretarial assistant are ordered to keep all information obtained from the records in strict confidence.

Judge Hastings appealed from allowance of the Committee's petition, though not from the denial of his cross-petition for public disclosure. The Miami Herald filed a notice of appeal which has since been voluntarily dismissed. We have stayed the district court's disclosure order pending resolution of this appeal.[3]

## I. THE COMMITTEE'S STANDING TO PETITION FOR GRAND JURY MATERIALS

Judge Hastings contends that the Committee was without standing under Article III to bring a proceeding in the district court seeking access to grand jury materials. He argues that absent more explicit congressional authorization the Committee, as an entity of the United States, cannot initiate this petition. *United States v. Mattson,* 600 F.2d 1295 (9th Cir.1979); *United States v. Solomon,* 563 F.2d 1121 (4th Cir.1977).

We do not agree. Assuming the standing doctrine enunciated in *Mattson* and *Solomon* applies to the Committee's petition, we nonetheless hold that the Committee's statutory duty to "conduct an investigation as extensive as it considers necessary," 28 U.S.C. § 372(c)(5), provides the necessary congressional grant of standing to petition for grand jury records. As the district court said,

> A contrary construction of the Act would be wholly inconsistent with its broad purposes—to preserve the integrity of the

**3.** Because all the regular judges of the Court of Appeals for the Eleventh Circuit have recused themselves, the Chief Justice of the United States has designated the judges comprising the present panel to sit on this appeal.

judiciary, to maintain public confidence in the judicial process, to protect the wrongfully accused, and to strengthen judicial independence. The goals are better served by a careful evaluation of the need asserted in the petition, rather than denying the authority of the Committee to initiate the petition in the first instance.

576 F.Supp. at 1279 (footnote omitted).

Further evidence that Congress intended the Committee to have standing to petition for records of this type can be found in its conferral of "full subpoena powers" upon the Committee, 28 U.S.C. § 372(c)(9)(A). A subpoena would have been issued by the clerk of the court of appeals, 28 U.S.C. § 332(d)(1), and been subject to enforcement through the contempt power of the court of appeals. See Fed.R.Civ.P. 45(f). Had the Committee subpoenaed the records, however, it would have thrust the court of appeals into the novel role of supervising disclosure of grand jury materials. The Committee instead sought the records through the traditional path of petitioning the district court. This choice was prudent since it permitted the district court to exercise its customary control over grand jury materials. We see no point in erecting barriers to discourage the Committee from following a judicially sound alternative to its statutory subpoena power. At the same time, Congress's express grant of subpoena power is an indication that Congress meant the Committee to have wideranging power of its own to secure necessary materials, and that a petition of this nature is not, therefore, outside the ambit of its intended powers.

■ Judge Hastings further contends that, even if the Committee has standing, only the Attorney General may bring a petition for access to grand jury materials. He cites 28 U.S.C. § 516 which provides,

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice,

under the direction of the Attorney General.

We do not believe that section 516 bars the Committee from acting in its own behalf in petitioning for access to the grand jury records. An investigating committee under paragraph (4) of section 372(c) is an arm of the judicial branch, not an executive agency. While it may doubtless enlist the aid of the Attorney General on appropriate occasions it was not bound to do so here. Congress certainly never intended a judicial investigating committee to be beholden to the Attorney General for permission to seek the information it needs. Cf. Senate Select Committee on Presidential Campaign Activities v. Nixon, 366 F.Supp. 51 (D.D.C.1973) ("this section [28 U.S.C. § 516] does not require a congressional litigant to be represented by the Justice Department"). The independence of the Committee is indicated both in its mandate to "conduct an investigation as extensive as it considers necessary," 28 U.S.C. § 372(c)(5), and in its investiture with "full subpoena powers," permitting it to have sought the materials directly, 28 U.S.C. § 372(c)(9)(A). In the present context, we see little difference between a petition and a subpoena. The Committee was entitled to litigate on its own, without reference to section 516.

■ Judge Hastings also argues that because this case involves important Article III concerns, all Article III judges, wherever located, have a "substantial interest" in the case and therefore must disqualify themselves under 28 U.S.C. § 455. The Supreme Court rejected such a construction of section 455 in United States v. Will, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), a case involving the compensation clause, which guarantees the inviolability of federal judges' salaries. Under the Rule of Necessity an interested judge may sit if the alternative would be to deny litigants a forum.

As this Court has observed elsewhere, the Compensation Clause is designed to benefit, not the judges as individuals, but the public interest in a competent and independent judiciary.... The public

might be denied resolution of this crucial matter if first the District Judge, and now all the Justices of this Court, were to ignore the mandate of the Rule of Necessity and decline to answer the question presented. On balance the public interest would not be served by requiring disqualification under § 455.

449 U.S. at 217, 101 S.Ct. at 481–482. The same reasoning applies to the present case involving an investigation under a statute designed to safeguard the integrity of the federal judiciary. We therefore decline to disqualify ourselves under section 455.

## II. THE DISTRICT COURT'S AUTHORITY TO ALLOW THE COMMITTEE ACCESS TO GRAND JURY RECORDS

The main issue presented is whether the district court had authority to set aside the usual secrecy surrounding grand jury records in favor of the Committee.

In contending that the court lacked such authority, Judge Hastings argues that Fed. R.Crim.P. 6(e) is the controlling source of law in this area, and that none of its stated exceptions to the rule of secrecy apply to the Committee. Rule 6(e) provides as follows:

(1) **Recording of Proceedings.** . . . The recording or reporter's notes or any transcript prepared therefrom shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case.

(2) **General Rule of Secrecy.** A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . .

(3) **Exceptions.**

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

. . . . .

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury; or

(iii) when the disclosure is made by an attorney for the government to another federal grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Judge Hastings contends that the only arguably relevant exception is Rule 6(e)(3)(C)(i), but that the Committee's investigation is not "preliminarily to or in connection with a judicial proceeding."

■ The district court apparently agreed that neither the Rule 6(e)(3)(C)(i) exception nor any other express exception to the secrecy requirement in Rule 6(e) was applicable. It rejected, however, the assumption that Fed.R.Crim.P. 6(e) "provides the exclusive framework within which [the court's] discretion is to be exercised." Rather the court held that Rule 6(e) did not preclude it "from fashioning an alternate method for disclosure under its general supervisory authority over grand jury proceedings and

records." We support this analysis in the special circumstances of a judicial investigation under section 372(c). In so doing, we observe that the Committee's posture in seeking the grand jury materials is at least closely analogous to the situation for which the explicit Rule 6(e)(3)(C)(i) exception was created. The procedures for which the grand jury materials are being garnered may not be a "judicial proceeding" in the strict sense, *see infra,* but they are very similar. This fact, as well as the unique character of the Committee, the scope of its investigative powers, and the importance of its mission, all bolster the district court's conclusion that it was appropriate to exercise its inherent power in this context.

A. *Source of the District Court's Inherent Power*

The district court's belief that it had inherent power beyond the literal wording of Rule 6(e) is amply supported. This is not to say the rule is not normally controlling. It is. But it has been authoritatively said that the rule is not the true source of the district court's power with respect to grand jury records but rather is a codification of standards pertaining to the scope of the power entrusted to the discretion of the district court:

> [T]he federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it.

*Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959) (footnotes omitted). The Advisory Committee's note on Rule 6(e) states, "This rule continues the traditional practice of secrecy on the part of members of the grand jury, except when the court permits a disclosure . . . ." Notes of Advisory Committee on Rules, following Fed.R.Crim.P. 6. This concept, to be sure, provides little guidance as to when a court is free to go beyond the rule; still, it is certain that a court's power to order disclosure of grand jury records is not strictly confined to instances spelled out in the rule. "Rule 6(e) which was not intended to create new law, remains subject to the law or traditional policies that gave it birth." *In re Report & Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. 1219, 1229 (D.D.C.), *mandamus denied,* 501 F.2d 714 (D.C.Cir.1974). *See also In re Biaggi,* 478 F.2d 489 (2d Cir.1973).

The history of Rule 6(e) offers an interesting picture of how courts' "inherent power" has shaped the rule. First adopted by the Supreme Court in 1944, Rule 6(e) has been repeatedly amended to incorporate subsequent developments wrought in decisions of the federal courts. In 1971 a district court went beyond the language of Rule 6(e), which at the time permitted disclosure only to "attorneys for the government," and permitted access to grand jury records by agents of the IRS in connection with a Justice Department probe. *In re William H. Pflaumer & Sons, Inc.,* 53 F.R.D. 464 (E.D.Pa.1971). In 1977 Rule 6(e) was amended to also allow disclosure to "such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." The Advisory Committee cited *Pflaumer* and noted that "[a]lthough case law is limited, the trend seems to be in the direction of allowing disclosure to government personnel who assist attorneys for the government in situations where their expertise is required." Notes of Advisory Committee on Rules, following Fed.R.Crim.P. 6.

In 1983 the rule was again amended to incorporate a development in the law by the courts:

> New subdivision (e)(3)(C)(iii) recognizes that it is permissible for the attorney for the government to make disclosure of matters occurring before one grand jury to another federal grand jury. *Even absent a specific provision to that effect, the courts have permitted such disclosure in some circumstances.* See e.g.,

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 [60 S.Ct. 811, 84 L.Ed. 1129] (1940); *United States v. Garcia*, 420 F.2d 309 (2d Cir.1970). Notes of Advisory Committee on Rules, following Fed.R.Crim.P. 6 (emphasis added). These examples from the history of Rule 6(e) indicate that the exceptions permitting disclosure were not intended to ossify the law, but rather are subject to development by the courts in conformance with the rule's general rule of secrecy. *See generally Fallen v. United States*, 378 U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L.Ed.2d 760 (1964) ("the Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances").

Accordingly, we do not believe that the district court's power to permit the Committee access to the otherwise secret grand jury minutes must stand or fall upon a literal construction of the language of Rule 6(e).[4]

B. *Request of Judicial Investigating Committee May Suffice for Exercise of Court's Inherent Power*

The above conclusion does not, of course, end the matter. The next question is whether the petition of a judicial investigating committee is the kind of request which, in proper circumstances, can trigger a district court's inherent power to release grand jury minutes. Certainly, as the court below stated, courts must adhere to Rule 6(e) in "garden variety" petitions for grand jury disclosure. The rule was intended to provide a reliable statement of the law in this area, and would be rendered meaningless if departures were freely

sanctioned. We assume that courts are not empowered to act outside Rule 6(e) in other than exceptional circumstances consonant with the rule's policy and spirit. Like the district court, however, we believe the request of a judicial investigating committee may constitute such an exceptional situation.

■ We think it highly significant that the grand jury materials in question were sought by an investigating committee acting pursuant to express statutory authority to "conduct an investigation *as extensive as it considers necessary* ...." 28 U.S.C. § 372(c)(5) (emphasis added).[5] There is every indication that Congress meant this open-ended grant to be read just as broadly as it is written. The House Report on the Act states that "Paragraph (c)(5) provides the special committee with *broad flexibility and general authority* to investigate the facts and allegations contained in the complaint." H.R.Rep. No. 1313, 96th Cong., 2d Sess. 11 (1980) (emphasis added). And the unique composition of an investigating committee makes such an extensive delegation reasonable. The federal judges who compose it are sheltered by Article III, and must as an obligation of their office conduct an unbiased, objective inquiry. They are suited by experience and professional training to determine what evidence needs to be examined, and to deal discreetly with all types of evidence, including confidential materials like those here in issue.

Moreover, the question under investigation—whether an Article III judge should be recommended for impeachment by the Congress, otherwise disciplined, or granted a clean bill of health—is a matter of great

---

**4.** This conclusion is in no way inconsistent with the provision in the Act that "Except as expressly provided in this subsection, nothing in this subsection shall be construed to affect ... the Federal Rules of Criminal Procedure ...." 28 U.S.C. § 372(c)(16). Our holding does not amend Rule 6(e) nor does it permit investigating committees under the Act to circumvent the court-fashioned standards applicable to Rule 6(e). *See infra* Part III.

**5.** As the rule of secrecy derives from "a long-standing rule of common law," Congress can apparently create statutory exceptions to the

Rule 6(e) standards for disclosure. *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 566 & n. 11, 103 S.Ct. 1356, 1361 & n. 11, 75 L.Ed.2d 281 (1983). We do not suggest here that the broad grant of power to investigating committees under section 372(c) goes so far as to indicate a congressional intent to circumvent completely the secrecy concerns of Rule 6(e). But in passing on the propriety of an exercise of inherent power, courts may take into account "a specific statutory policy favoring disclosure in particular circumstances." *Id.* at 4315 (Brennan, J., concurring).

societal importance. Given the character of an investigating committee and what is at stake—the public confidence in the judiciary, the independence and reputation of the accused judge—paragraph (c)(5) must in our view be read, with very few strings, as conferring authority to look into whatever is material to a determination of the truth or falsity of the charges.

Beyond this construction derived from the breadth of the statutory language, there is support in the legislative history for the specific proposition that Congress intended a judicial investigating committee to have access to grand jury minutes. Several years before section 372(c) was enacted, during the Watergate impeachment proceedings, District Judge Sirica had ruled that he possessed inherent power to deliver grand jury materials to the House Committee on the Judiciary; and he had exercised that power. *In re Report & Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. at 1227–30. Since Congress clearly conceived of section 372(c) as a form of alternative to impeachment, it is logical to infer that Congress intended a judicial investigating committee to enjoy access to grand jury materials on a basis similar to that provided to Congress by Judge Sirica. *See* S.Rep. No. 96–362, 96th Cong., 2d Sess. 4–6, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4315, 4318–20; *Judicial Tenure Act: Hearings on S. 1423 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Judiciary Comm.*, 95th Cong., 1st Sess. 24–26 (1977) (Statement of Senator Nunn).

This inference finds support in the colloquy in *Judicial Tenure and Discipline—1979–80, Hearing Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary*, 96th Cong., 2d Sess. 142–43 (1980). There Representatives Rodino and McClory referred to the Judiciary Committee's acquisition of grand jury materials during the Watergate proceedings and the need for access to confidential information if the proceedings proposed by the bill are to succeed. Thus, in the context of a question by Representative Kastenmeier as to whether information possessed by the Justice Department would be available, the colloquy included the following:

> Chairman RODINO.... I think that while, as Mr. McClory suggested a while ago, there has to be utmost care in keeping confidential certain data and certain records, that certainly could prejudice, and I think we have to regard that as a necessary risk. But I believe that the judiciary has to recognize that there is a need for this kind of extension of the line of communication, if indeed we are going to succeed in this.

> Mr. McCLORY. Let me just add that I think there should be disciplinary action taken against a judge who violates the confidence of material that is delivered to him in confidence.....

> We had very good communication during the impeachment inquiry with the Federal judge from whom we received grand jury information which, of course, is required to be secret. We carefully observed the secrecy of those confidential communications, and I think that it was an important consideration. A violation of such confidence should, I believe, be subject to some kind of discipplinary [*sic*] action.

While cryptic, the colloquy is fairly susceptible to the interpretation that Congress believed the court could and should give the investigating judges access to grand jury materials.

We accordingly view an investigating committee's petition to inspect grand jury materials as being backed by a congressional mandate; and we believe this mandate furnishes special justification for the district court to exercise its supervisory power upon a committee's request. *See* note 5, *supra*.

The above construction is reinforced by the fact that, in enacting section 372(c), Congress was clearly anxious to establish public confidence in the investigatory mechanism. The Senate Judiciary Committee noted,

It is important that the American people continue to be confident in their Federal judiciary. The perception of a viable healthy judiciary is of critical importance to our system of justice. With this thought in mind, the Committee is of the view that a statutory procedure be implemented to assure the public that valid citizen complaints are being considered in a forthright and just manner. Once again, the perception of justice is of critical importance....

S.Rep. No. 362, 96th Cong., 1st Sess. 7 (1979), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4315, 4321. Absent a review of the record of the grand jury that actually indicted a federal judge, a committee's investigation might well not reach the degree of thoroughness necessary to ensure public confidence that justice had been done.[6] Indeed, the public would quickly question the sincerity of an investigation that did not even gain access to grand jury records under the federal courts' control. We thus infer not only from the Act's broad language but from its purpose a clear congressional intent that grand jury materials be among those available to a committee in appropriate circumstances.

A further justification for the court's invocation of its inherent power here is the close correspondence between the present situation and the express exception to grand jury secrecy allowed in Fed.R. Crim.P. 6(e)(3)(C)(i). The latter exception permits the district court to direct disclosure "preliminarily to or in connection with a *judicial proceeding.*" (Emphasis supplied.)

To be sure, the circuit council and Judicial Conference proceedings to which an investigating committee's investigation is ancillary are not proceedings before any identifiable court, and for this reason, may not be a "judicial proceeding" within the precise language of the exception. A single circuit council includes a mixture of judges from the court of appeals and from various district courts; and the Judicial Conference of the United States is made up of judges from many different courts. *See, e.g., Henry v. United States,* 432 F.2d 114, 119–20 (9th Cir.1970) (when members of the circuit council act, "they act as a council, not a court."), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971). Actions by a circuit council or the Judicial Conference do not, therefore, exactly fit within Judge Learned Hand's widely quoted definition of a "judicial proceeding"—that it "includes any proceeding determinable by a court...." *Doe v. Rosenberry,* 255 F.2d 118, 120 (2d Cir.1958). By the same token, impeachment proceedings before Congress, which are a possible outcome of this investigation, are not by a "court," although the Congress becomes something like a court for this purpose. *Compare Kilbourn v. Thompson,* 103 U.S. 168, 190, 26 L.Ed. 377 (1881).

Nonetheless, while a committee's investigation is thus perhaps not ancillary to a "judicial proceeding," in the strict sense, the judge-run proceedings with which it is connected fit within Justice Holmes's definition of a "judicial inquiry":

A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end.

*Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908). Under that definition, a state court's bar disciplinary proceeding has been characterized as a judicial inquiry. *Erdmann v. Stevens,* 458 F.2d 1205, 1208–09 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). Proceedings by a circuit council after a committee's investigation closely mirror Justice Holmes's definition. Upon receipt of a committee's report, a circuit council,

(A) may conduct any additional investigation which it considers necessary;

---

**6.** In an investigation going to the character and worthiness of trust of an individual, the Committee's ability to say that it has checked out *everything* can be important. If an extensive examination turns up nothing or only trivia, its findings will serve to enhance the reputation of the judge. If the examination is not sufficiently extensive, there will always be lingering doubts.

(B) shall take such action as is appropriate to assure the effective administration of the business of the courts within the circuit....

28 U.S.C. § 372(c)(6). A circuit council, although not a court, is clearly charged with investigating, declaring and enforcing liabilities (short of impeachment) on the basis of past facts under the legal standard of "effective administration of the business of the courts." Furthermore, a council's proceedings must, as a minimum, satisfy the procedural mandates of the Act, which require that:

(A) adequate prior notice of any investigation be given in writing to the judge or magistrate whose conduct is the subject of the complaint;

(B) the judge or magistrate whose conduct is the subject of the complaint be afforded an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing; and

(C) the complainant be afforded an opportunity to appear at proceedings conducted by the investigating panel, if the panel concludes that the complainant could offer substantial information.

28 U.S.C. § 372(c)(11).

Given the judicial character of a circuit council's procedures, and the "judicial inquiry" that comprises a council's task, a council's review is little removed from the judicial proceedings encompassed within the Rule 6(e)(3)(C)(i) exception, whether or not it is a judicial proceeding in the strict legal sense. Disclosure to an investigating committee is, therefore, closely akin to a Rule 6(e)(3)(C)(i) disclosure "preliminarily to ... a judicial proceeding."

For the above reasons, we believe that a petition by a judicial investigating committee presents one of the occasions when a district court may act outside the strict bounds of Rule 6(e), in reliance upon its historic supervisory power. Permitting such a committee to have access to grand jury materials in proper circumstances would be consistent with Congress's intent under the Act and with the policy and spirit of Rule 6(e).

## III. THE DISTRICT COURT'S EXERCISE OF DISCRETION IN THE PRESENT CASE

█ Having concluded that the Committee was entitled to petition for the grand jury records and that the district court had power, upon a showing of proper circumstances, to grant that petition, we must still decide whether the district court properly allowed the petition on the facts of this case. For while, as indicated above, a district court may grant access in this type of situation under its inherent power, we believe it may only do so in an appropriate factual situation and with due regard to the standards for disclosure enunciated by the Supreme Court.

The Supreme Court has emphasized "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Accordingly, "[the] 'indispensable secrecy of grand jury proceedings,' *United States v. Johnson*, [319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)], must not be broken except where there is a compelling necessity." *United States v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). The Supreme Court has delineated a test for deciding when disclosure is appropriate:

It is clear from *Procter & Gamble* and *Dennis* [v. *United States*, 384 U.S. 855 [86 S.Ct. 1840, 16 L.Ed.2d 973] (1966)] that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing

justification.... In sum, as so often is the situation in our jurisprudence, the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material.... Moreover, we emphasize that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion.

*Douglas Oil Co.,* 441 U.S. at 223, 99 S.Ct. at 1675. Applying the Supreme Court's standards to the present case we are of the opinion that the district court did not abuse its discretion in granting disclosure to the Committee.

### A. *The Need for the Grand Jury Records*

The district court could properly determine that the Committee's need for the grand jury records was both apparent and compelling. The Committee is charged under the Act with conducting an investigation in order to further "the effective and expeditious administration of the business of the courts...." 28 U.S.C. § 372(c)(6)(B). As already noted, the Committee's investigation is to be "as extensive as it considers necessary." Section 372(c)(5). A thorough investigation is essential not only to ensure the integrity of federal judges, but also to instill public confidence in the judiciary. *See supra.* The Committee must be able to represent to the Council, and the Council must be satisfied, that all available evidence of possible materiality has been sifted: for the Committee to examine matters extensively and *find nothing* may be as much a part of its duty as to look at evidence whose incriminating nature is known in advance. The object of the investigation is not to prove a case against the judge but to determine whether there is or is not a case.

Here we believe the Committee established its need for access to the *entire* record of the grand jury that indicted Judge Hastings. To all appearances the grand jury had focused solely on the alleged bribery incident for which Judge Hastings was indicted and upon which the complaint is based. Only by examining all of the record can the Committee determine the true state of the evidence for or against the charge. No content-based limitation on the requested access is feasible given the Committee's mission: the Committee is interested in both inculpatory and exculpatory evidence that might have been revealed before the grand jury, and the Committee and Council alone—not the district court—can properly determine what is and is not significant. To be sure, if it had been brought out that the grand jury minutes were likely to include substantial separable material unrelated to any proper object of the Committee's investigation, a different order might have been appropriate, but this is not such a case.[7]

█ This petition is quite different from that in connection with a civil suit. In the normal situation attorneys seek grand jury material to build their case and thus, in the interest of grand jury secrecy, they must exhaust other means of securing the relevant information before being granted access. "[T]he court could take into account any alternative discovery tools available by statute or regulation to the agency seeking disclosure." *United States v. Sells Engineering, Inc.,* — U.S. —, —, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983). This requirement is not appropriate in the present case because of the Committee's unique investigatory mission and the necessity that, when the investigation is over, the public be assured that it was complete.

---

7. Judge Hastings contends that the confidentiality requirement in section 372(c)(14), *see supra* note 2, should be construed to prevent the Committee from even filing a petition because such a petition itself destroys confidentiality. To read the requirement this way would unduly restrict the very ability to investigate complaints. The statute requires only that "[a]ll papers, documents, and records of proceedings related to investigations conducted under this subsection shall be confidential ...." We see no breach of confidentiality on the facts of this case.

Since evidence before a grand jury is not necessarily presented at trial, the Committee's review of the entire grand jury record for relevant evidence is important to its task of leaving no stone unturned.[8] Thus given its special responsibilities, we believe the Committee satisfied the "particularized need" standard by demonstrating a close nexus between the subject of the grand jury proceeding and the complaint under investigation. Nothing more was required on the facts of this case.[9]

### B. *The Secrecy Interest*

Against the need for disclosure stands the competing public interest in grand jury secrecy. The Supreme Court has recognized five reasons for grand jury secrecy:

1) To prevent the escape of those whose indictment may be contemplated; 2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; 3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; 4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; 5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there is no probability of guilt.

*United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954), *quoted in Procter & Gamble*, 356 U.S. at 681 n. 6, 78 S.Ct. at 986 n. 6; *see also Douglas Oil Co.*, 441 U.S. at 219 n. 10, 99 S.Ct. at 1673 n. 10. In the present case the grand jury is no longer active and the trial of Borders and Judge

Hastings has been completed. Thus the first three reasons are no longer of major concern. Furthermore, while Judge Hastings has an interest in avoiding disclosure of the contents of the grand jury records, his completed criminal trial removes the fear of disclosing the fact that he was under investigation, as well as the fear of unjustly standing trial. But the public interest in encouraging free and untrammeled testimony before future grand juries is still important. "Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co.*, 441 U.S. at 222, 99 S.Ct. at 1674 (footnote omitted).

The "reduced" interest in secrecy is further diminished in this case when the identity of the party requesting access is considered. The Supreme Court has stated:

The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others.... For example, a district court might reasonably consider that disclosure to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public.

*United States v. Sells Engineering, Inc.*, —— U.S. at ——, 103 S.Ct. at 3149. Here the Committee consists of federal judges, who can be expected as an obligation of their office to respect the confidentiality of grand jury records (one of their duties being to supervise grand juries). Further, the district court imposed protective conditions on the Committee's access. The location and reproduction of the records, the duration of their availability, and the per-

---

8. We note too that section 372(c)(5) requires the Committee to file its report "expeditiously." Insofar as speedy disposition of complaints against judges is desirable, we think it undesirable to require the Committee to attempt to replicate the grand jury's efforts.

9. Judge Hastings argues that the district court should have reviewed the grand jury record and released only relevant excerpts. But in this unique kind of situation, such a process would

have been inappropriate. After the Committee's showing of a close nexus between the grand jury proceeding and the complaint, it would have been improper for the district court to substitute its own judgment on the relevance of particular portions of the grand jury records. We agree with the district court that, "[t]o do so would usurp the investigatory function Congress has placed within the exclusive province of the Special Committee."

sons allowed access are all strictly limited by the district court's order.

## C. Striking a Balance

When the competing concerns are balanced, we think the proper conclusion here is that the Committee's need for the records outweighs the public interest in secrecy. The Supreme Court has stated that "the district court may weigh the public interest, if any, served by disclosure to a governmental body—along with the requisite particularized need—in determining whether 'the need for disclosure is greater than the need for continued secrecy.' " *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 567 n. 15, 103 S.Ct. 1356, 1362 n. 15, 75 L.Ed.2d 281 (1983) (quoting *Douglas Oil Co.*, 441 U.S. at 222, 99 S.Ct. at 1674). The district court correctly considered the important "public interest in the integrity and independence of the judiciary" in deciding to grant disclosure. We see no grounds for concluding that the district court abused its discretion in granting the Committee restricted access to the grand jury records.

■ Judge Hastings's final argument is that the district court should have held an evidentiary hearing on his two "affirmative defenses": 1) that the petition is in furtherance of a conspiracy by the judges of the Eleventh Circuit to deprive Judge Hastings of his constitutional rights; and 2) that the disclosure is likely to result in leakage of the grand jury records to the public. Judge Hastings's charge that the Committee's investigation is part of a larger conspiracy is not a proper subject for consideration in this appeal. The investigation is being conducted pursuant to the Act and the district court was not the proper forum for addressing any underlying questions of constitutional abuse. Those concerns may be raised by Judge Hastings in a challenge

to the actions, if any, taken by the Judicial Council.[10]

■ Judge Hastings's allegation of likely leakage is based on a news release circulated by the clerk of the Eleventh Circuit announcing the filing of the complaint against Judge Hastings and the appointment of an investigating committee. (See Appendix.) Judge Hastings, however, failed to point to any substantive disclosures relative to the investigation. Indeed, Judge Hastings's opposition to the Committee's petition admitted that Chief Judge Godbold, chairman of the Committee, had refused attempts by the press to obtain further disclosures of information because of the confidentiality provision of the Act. Judge Hastings's sole basis for the claim that public disclosure is likely to occur is the assertion that the news release has "generate[d] investigative activity by the press that [will] make it unlikely confidentiality [will] effectively be maintained." While we do not pass on the propriety of the news release, we see no logical connection between the announcement of the investigation and a likelihood that the grand jury records will be publicized by the Committee. On the contrary, the court-imposed limitations on access and the Committee's apparent awareness of the confidentiality requirement of section 372(c)(14) lead to the opposite inference. In any event the district court did not err in rejecting this "affirmative defense" without holding an evidentiary hearing.

We conclude therefore that the restricted access granted by the district court must be AFFIRMED.

Our stay shall be lifted upon issuance of mandate.

*So ordered.*

---

**10.** Under section 372(c)(10) a judge aggrieved by an action of the judicial council of the circuit may petition the Judicial Conference of the United States for review of that action.

APPENDIX

# UNITED STATES COURT OF APPEALS

## ELEVENTH CIRCUIT

### OFFICE OF THE CLERK

**NORMAN E. ZOLLER**
CLERK

TEL. 404–221–6187
FTS–242–6187
56 FORSYTH ST. N.W.
ATLANTA, GEORGIA 30303

**NEWS RELEASE** **April 15, 1983**

A complaint has been filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit alleging that United States District Judge Alcee L. Hastings, of the Southern District of Florida, has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts. This complaint was filed pursuant to 28 U.S.C. Section 372(c)(1) and the Rule for the Conduct of Complaint Proceedings under 28 U.S.C. Section 372(c) as promulgated by the Judicial Council of the United States Court of Appeals for the Eleventh Circuit.

In compliance with Section 372(c) and the Rule of the Eleventh Circuit, Chief Judge John C. Godbold of the Eleventh Circuit has appointed a special committee to investigate the facts and allegations contained in the complaint and to conduct an investigation as extensive as it considers necessary. The committee is composed of Chief Judge Godbold of Montgomery, Alabama; Circuit Judge Gerald Bard Tjoflat of Jacksonville, Florida; Circuit Judge Frank M. Johnson, Jr. of Montgomery, Alabama; Chief District Judge Sam C. Pointer, Jr. of Birmingham, Alabama; and District Judge William C. O'Kelley of Atlanta, Georgia.

The Investigating Committee has designated and appointed John Doar, Esquire, an attorney of New York, New York, who is a member of the bar of the United States Court of Appeals for the Eleventh Circuit as investigator to aid and assist the Committee in its investigation.