**In re COMPLAINTS OF JUDICIAL MISCONDUCT.**

**No. 93–372–001.**

United States Judicial Conference Committee to Review Circuit Council Conduct and Disability Orders.

Nov. 2, 1993.

## COMMITTEE MEMORANDUM AND ORDER

This matter is before the Judicial Conference Committee to Review Circuit Council Conduct and Disability Orders pursuant to an undated petition for review received by this Committee on July 13, 1993. Complainant seeks review of the June 23, 1993 order of the Judicial Council of the Tenth Circuit dismissing for lack of standing complainant's complaints filed under 28 U.S.C. § 372(c) against a district judge.

### Committee Authority

Under 28 U.S.C. § 372(c)(10), "A complainant, judge, or magistrate aggrieved by an action of the judicial council under paragraph (6) of this subsection [—the paragraph under which the judicial council may take action on a complaint of judicial misconduct following the report of a special investigating committee—] may petition the Judicial Conference of the United States for review thereof. The Judicial Conference, or the standing committee established under section 331 of this title, may grant a petition filed by a complainant, judge, or magistrate under this paragraph."

Section 331 of 28 U.S.C., in turn, provides, "The Conference is authorized to exercise the authority provided in section 372(c) of this title as the Conference, or through a standing committee. If the Conference elects to establish a standing committee, it shall be appointed by the Chief Justice and all peti-

tions for review shall be reviewed by that committee."

■ This committee is the standing committee established by the Judicial Conference pursuant to § 331 to act for the Judicial Conference in proceedings of this kind. Pursuant to §§ 331 and 372(c)(10), this committee may grant or deny complainant's petition for review, and the committee's orders in this respect are final and not appealable.

### Background

Complainant filed a complaint on August 8, 1991, raising a number of allegations against the district judge arising out of the judge's handling of certain litigation. Complainant filed subsequent complaints raising allegations against the same district judge, and arising out of the same judicial proceeding, on August 10, 1991, August 15, 1991, and October 10, 1991. None of the complaints alleged that complainant was a party to, or had any involvement in, the litigation in question. The chief judge of the Court of Appeals for the Tenth Circuit—the judge charged with responsibility under § 372(c)(2)–(4) for the initial determination of complaints of judicial misconduct or disability filed under § 372(c)—consolidated all four complaints under a single number.

The district judge filed a response to the complaints and also filed a motion to dismiss for lack of standing on the part of complainant, a suggestion of mootness, and a motion to supplement the record. In a June 5, 1992 order, the chief judge of the Court of Appeals for the Tenth Circuit denied the motions to dismiss for lack of standing and mootness, and took the motion to supplement the record under advisement. The chief judge dismissed a number of the complaints' allegations under § 372(c)(3)(A) on the grounds that they were factually unsupported, were directly related to the merits of decisions or procedural rulings, or did not allege conduct of the judge but rather of other persons not subject to § 372(c).

The remaining allegations in the complaints were that the judge had made extrajudicial comments about the litigation pending before the judge, in violation of Canon 3A(6) of the Code of Conduct for United States Judges. Finding no basis for dismissal of these allegations under § 372(c)(3), the chief judge appointed a special committee under § 372(c)(4) to investigate these allegations.

After investigation, the special committee on its own motion recommended to the judicial council that the council reexamine the chief judge's denial of the motion to dismiss for lack of standing. In a June 23, 1993 memorandum, the judicial council ruled that its proceeding under § 372(c) constituted a "judicial" proceeding to which the constitutional requirements of a case or controversy applied. Even if Congress in § 372(c) had meant to confer standing to file complaints upon persons who had not suffered a concrete injury sufficient to confer standing under Article III of the Constitution, the council reasoned, such statutory broadening of standing requirements was impermissible under *Lujan v. Defenders of Wildlife*, —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The council further found that complainant had not alleged injury sufficient to create a case or controversy under Article III. Accordingly, the council dismissed for lack of standing those portions of the complaints that had not already been dismissed by the chief judge. Complainant's petition for review of the council's order followed.

### Discussion

■ Complainant's petition for review challenges both the chief judge's dismissal of many allegations of the complaints without special committee investigation pursuant to § 372(c)(3), and the judicial council's dismissal of the remaining allegations of the complaints pursuant to § 372(c)(6)(C) for lack of standing. Section 372(c)(10), however, expressly limits the authority of the Judicial Conference, and hence of this committee, to the review of orders issued by judicial councils under § 372(c)(6) following receipt of the report of a special committee. With that express exception, "all orders and determinations ... shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." § 372(c)(10). This committee, accordingly, lacks jurisdiction over complain-

ant's challenge to the chief judge's June 5, 1992 order of dismissal. This committee has jurisdiction to review only the June 23, 1993 order of dismissal of the Judicial Council of the Tenth Circuit. To that review we now turn.

The question before us is the correctness of the Tenth Circuit Council's conclusion that in reaching a determination under § 372(c)(6) a judicial council exercises an Article III "judicial function" to which the standing requirements for an Article III case or controversy must apply. Our research has uncovered no case in which any court has ever considered this question. Nor are we aware that any judicial council has ever expressly addressed it in a § 372(c) order. However, § 372(c) orders which entertain allegations brought by complainants who lack traditional standing are legion, denoting the common understanding of the circuits in implementing the Act over the last twelve years that traditional standing requirements do not apply.

To cite the most prominent example, the 1983 complaint filed in the Eleventh Circuit against Judge Alcee Hastings, which alleged that Judge Hastings had conspired to obtain a bribe in return for a judicial act and which ultimately contributed to Judge Hastings' impeachment and removal from office, was filed by two district judges. *In the Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit,* 783 F.2d 1488, 1492 (11th Cir.), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). It is doubtful that these two judges would have had standing, in the strict sense, to complain about Judge Hastings' alleged acceptance of a bribe. They had no more than the generalized interest of any federal judge in the integrity and reputation of the federal judiciary. Yet that complaint resulted in years of arduous investigation by a special committee of the Eleventh Circuit; a certification to the Judicial Conference by the Eleventh Circuit Judicial Council pursuant to § 372(c)(7)(B) of the council's determination that Judge Hastings may have engaged in conduct which might constitute one or more grounds for impeachment; and a certification

to the House of Representatives by the Judicial Conference pursuant to § 372(c)(8)(A) that consideration of impeachment may be warranted. *Hastings v. Judicial Conference,* 829 F.2d 91, 96–97 (D.C.Cir.1987), *cert. denied,* 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988).

As another example, a complaint was filed by a police officer who, apparently as a spectator in a judicial proceeding, was offended by the peremptory tone used by the magistrate judge in demanding that an elderly man in a wheelchair remove his cap. The matter was concluded after the magistrate judge agreed to corrective action. Barr & Willging, *Administration of the Federal Judicial Conduct and Disability Act of 1980,* at 74 (Report to the National Commission on Judicial Discipline and Removal, March 15, 1993).

In many cases bar groups file complaints on behalf of aggrieved individuals, in order to embolden the individual against feared retaliation and protect the individual if retaliation is attempted. No one has questioned this practice. Indeed, the National Commission on Judicial Discipline and Removal recently issued recommendations aimed at bolstering it. *Report of the National Commission on Judicial Discipline and Removal,* at 100–02 (August 1993). In an Eleventh Circuit matter, for example, two bar groups complained that a magistrate judge had ordered a lawyer arrested and hauled before him in handcuffs and chains because a conflict had made it impossible for the lawyer to appear at a hearing. The Eleventh Circuit Council issued a stern public reprimand of the magistrate. Complaint no. 88–2101 (11th Cir.Jud.Council, October 9, 1990). Is such bar participation now to be precluded for lack of standing?

Also, Congress amended the Act in 1990 to permit a chief judge to identify a complaint on the basis of information available to the chief judge. 28 U.S.C. § 372(c)(1). This provision, which clearly signals Congress' assumption that § 372(c) complainants should not have to overcome standing requirements, would seemingly be unconstitutional under the Tenth Circuit Council's reasoning.

Treating § 372(c) proceedings as strictly judicial proceedings under Article III might well have a host of other consequences just as bizarre as the imposition of traditional standing requirements. Is § 372(c)(10)'s bar to judicial review of § 372(c) determinations constitutionally suspect? Do perfectly sensible limitations on the rights of complainants in § 372(c) proceedings violate complainants' due process rights? Are the confidentiality restrictions of § 372(c)(14) unconstitutional? These various statutory provisions, like the recent amendment permitting chief judge identification of complaints, suggest that Congress did not intend a § 372(c) proceeding—however "judicial" in actual character it might sometimes be—to constitute a judicial proceeding for constitutional purposes.

The legislative history of § 372(c) provides further support for this view. The relevant House report stated as follows: "In the context of judicial discipline and disability, it did not appear that there had been a showing of a serious, pervasive and recurrent problem that could not be handled by administrative proceedings within the judiciary itself. Therefore, rather than create luxurious mechanisms such as special courts and commissions—with all the trappings of the adversary process ...—the legislative solution crafted by this Committee ... emphasized placing primary administrative responsibility within the judicial branch of government." H.R.Rep. No. 1313, 96th Cong., 2d Sess. 4 (1980). The report goes on to point out that "the legislation creates much more of an 'inquisitorial-administrative' model than an 'accusatorial-adversary' one. In this regard, the judicial council is not to be thought of as a passive and impartial referee; rather, the council can become the active gatherer of evidence and can control the objectives and nature of the inquiry." *Id.* at 14.

Although no court has considered the standing issue, the Supreme Court in dictum in *Chandler v. Judicial Council,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), did address whether an order of a circuit council under § 332 amounts to a "judicial decision." In that case Judge Stephen Chandler, a district judge in Oklahoma, sought to challenge in the Supreme Court an order of the Tenth

Circuit Judicial Council under § 332—years before the enactment of § 372(c)—directing that Judge Chandler not be assigned new cases. The threshold question for the Court was whether this was a judicial decision over which it would have appellate jurisdiction, or an administrative decision which it could not have original jurisdiction to review.

The Court, in an opinion joined by five Justices, stated that it "would be no mean feat" to find that "the challenged action of the Judicial Council was a judicial act or decision by a judicial tribunal...." *Id.* at 86, 90 S.Ct. at 1654. "We find nothing in the legislative history to suggest that the Judicial Council was intended to be anything other than an administrative body functioning in a very limited area in a narrow sense as a 'board of directors' for the circuit. Whether that characterization is valid or not, we find no indication that Congress intended to or did vest traditional judicial powers in the Councils. We see no constitutional obstacle preventing Congress from vesting in the Circuit Judicial Councils, as administrative bodies, authority to make 'all necessary orders for the effective and expeditious administration of the business of the courts within [each] circuit.'" *Id.* at 86 n. 7, 90 S.Ct. at 1654 n. 7. The Court added that "the action of the Judicial Council here complained of has few of the characteristics of traditional judicial action and much of what we think of as administrative action." *Id.* at 88 n. 10, 90 S.Ct. at 1655 n. 10.

Three Justices disagreed (the ninth Justice, Marshall, did not participate), and found the council order to be a "judicial" decision. *Id.* at 95–111, 90 S.Ct. at 1659–1667 (Harlan, J., concurring), at 133–35, 90 S.Ct. at 1678–1680 (Douglas, J., dissenting), at 141, 90 S.Ct. at 1682 (Black, J., dissenting). The Tenth Circuit Council relies heavily on the reasoning of Justice Harlan's concurrence, despite its rejection by a Supreme Court majority.

Two Eleventh Circuit decisions also suggest that § 372(c) functions and proceedings are not strictly "judicial." Judge Hastings' claim in one of these cases, *In the Matter of Certain Complaints, supra,* 783 F.2d 1488, was that the investigative and subpoena powers of special committees and circuit councils

under § 372(c) were *executive* in character and therefore could not properly be exercised by judges. The court concluded that § 372(c) functions could be performed by judges because they were "ancillary court management tasks" that were "concerned solely with matters affecting the management and reputation of the judiciary itself." *Id.* at 1504–05.

The other case, *In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261 (11th Cir.1984), was an appeal by Judge Hastings from a district court order permitting a special committee of the Eleventh Circuit Judicial Council to inspect grand jury records pertaining to Judge Hastings' criminal indictment. The court ruled that the district court permissibly exercised its inherent power, apart from the Federal Rules, in granting the committee's request. In addressing in dictum whether the committee's proceedings might also meet the exception in Fed.R.Crim.P. 6(e)(3)(C)(i), which permitted disclosure of grand jury records "in connection with a judicial proceeding," the court concluded that the committee's proceedings "may not be a 'judicial proceeding' in the strict sense, ... but they are very similar." *Id.* at 1268. The court found that a council's proceeding, "whether or not it is a judicial proceeding in the strict legal sense," *id.* at 1272, had a "judicial character," *id.*, and "fit within Justice Holmes's definition of a 'judicial inquiry': 'A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.'" *Id.* at 1271 (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)).

While § 372(c) proceedings have an adjudicatory aspect, they also have an administrative and managerial character not present in traditional adjudication by courts. As Rule 1(a) of the Illustrative Rules Governing Complaints of Judicial Misconduct and Disability makes clear, the purpose of § 372(c) "is essentially forward-looking and not punitive. The emphasis is on correction of conditions that interfere with the proper administration of justice in the courts." In concluding that "[t]he only purpose [of its § 372(c) proceed-

ing] can be to impose a sanction designed to penalize the judge for past conduct and to deter future conduct," the Tenth Circuit Council overlooks the importance of corrective action in the Act's scheme. The Council also overlooks the strong public interest in the integrity of the courts.

We believe, also, that the Tenth Circuit Council fundamentally misstates the alternatives when it says that "it is necessary to examine whether the Judicial Council is exercising an Article III function or, in the alternative, is exercising administrative duties delegated by Congress." We see a council as exercising neither Article III judicial functions nor administrative functions simply "delegated" by Congress. Rather, pursuant to legislation promulgated by Congress under its Article III power to "ordain and establish" federal courts, a council exercises administrative functions *ancillary* to the courts' exercise of their traditional "judicial" powers. *In the Matter of Certain Complaints, supra*, 783 F.2d at 1504–05. Implicit in the federal judiciary's authority under Article III to exercise the federal judicial power must be authority to perform internal administrative and managerial tasks reasonably deemed necessary to the smooth and effective exercise of the federal judicial power. *Id.* Efforts to uncover and correct judicial conduct that is "prejudicial to the effective and expeditious administration of the business of the courts" are, we believe, among those permissible managerial tasks. *Id.* at 1506–10. In the absence of legislation, therefore, we believe the judicial councils would have had power under Article III to organize for themselves disciplinary procedures akin to those created for them by Congress in § 372(c). Sen.Rep. No. 362, 96th Cong., 2d Sess. 7 (1980), reprinted at 1980 U.S.Code Cong. & Admin.News 4315, 4321; *Report of the National Commission on Judicial Discipline and Removal*, at 14 (August 1993).

To say, simply, that Congress "delegated" § 372(c) powers to the judiciary may imply that these are powers Congress itself could have wielded or delegated elsewhere. We believe there are serious constitutional doubts, however, whether Congress itself or some non-judicial branch agency could prop-

erly administer a disciplinary system short of impeachment akin to § 372(c). In our view, these doubts exist not because the task is inherently purely "judicial"—it's not—but because of the potential for interference with the independence of a coordinate branch that such an arrangement would create. *Id.* at 1505–06 & n. 13. That concern, of course, does not mean that Congress could not create such a system for the federal judiciary itself to administer.

Some would add that the exclusivity of the impeachment process would be a further obstacle to a congressionally-administered (and possibly to a judicially-administered) system of discipline short of impeachment. However, § 372(c)'s constitutional vulnerability on this ground, if any, would not turn in any way on whether § 372(c) proceedings are "judicial" or not.

The fact that the council's administrative authority fits compatibly within the scheme outlined in Article III does not mean that § 372(c) (or § 332) proceedings are "judicial" and therefore require an Article III case or controversy. We see no merit in the proposition that the Act would be constitutionally suspect under the doctrine of separation of powers if a § 372(c) proceeding were characterized as something other than a purely judicial function. Courts have held, again, that circuit councils constitutionally may exercise such non-judicial functions, which relate solely to "matters affecting the management and reputation of the judiciary itself," *id.* at 1504, as ancillary to the Article III judicial powers of the courts. *Id.* at 1503–06; *Hastings v. Judicial Conference*, 593 F.Supp. 1371, 1379–81 (D.D.C.1984), aff'd in part and vacated in part, 770 F.2d 1093 (D.C.Cir.1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91

L.Ed.2d 563 (1986). "[A]ny argument that the Act delegates legislative authority to the judiciary ... would be most implausible...." *Hastings, supra*, 829 F.2d at 104 (dictum).

For all of the above reasons, we rule that a proceeding under 28 U.S.C. § 372(c) is not a judicial proceeding subject to the Article III requirement of a case or controversy. A complainant, therefore, need not satisfy the requirements of standing imposed in judicial proceedings by Article III in order to maintain a complaint of judicial misconduct under § 372(c). Such a complaint may instead be filed by "any person," § 372(c)(1), alleging misconduct or disability as defined by § 372(c)(1).

In light of this ruling, we need not consider the Tenth Circuit Council's finding that the complainant here failed to allege sufficient injury to establish standing under Article III. We express no view on that issue.

The Tenth Circuit Council's June 23, 1993 order in this matter is reversed and the complaint is sent back to the Tenth Circuit Council with directions that the complaint be investigated and disposed of in the normal course pursuant to § 372(c).

FOR THE COMMITTEE[1]

   (s) <u>Levin H. Campbell</u>
      Levin H. Campbell
      United States Circuit Judge

---

1. This opinion was prepared by Judge Levin H. Campbell, with United States Circuit Judge Paul H. Roney, United States District Judge John P. Fullam, and United States District Judge Gordon Thompson, Jr., concurring.