In the Matter of ELECTRONIC SURVEILLANCE.

Misc. No. 84–819.

United States District Court, E.D. Michigan, S.D.

Nov. 1, 1984.

Martin Crandall, Asst. U.S. Atty., Detroit, Mich., Michael Schwartz, Atty. Grievance Com'n, State Bar of Michigan, Lansing, Mich., for petitioner.

Philip Colista, N.C. Deday LaRene, Detroit, Mich., for respondent.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

This matter is before the court on the motion of the Grievance Administrator of the Michigan Attorney Grievance Commission for disclosure, pursuant to 18 U.S.C. § 2517, of information gleaned from Title III electronic surveillance which allegedly incriminates certain members of the State Bar of Michigan. Although no federal or state criminal charges are pending against the attorneys involved, the Grievance Administrator believes that the information sought may lead to State Bar disciplinary proceedings against the attorneys. Neither the Grievance Administrator nor the court knows the identity of the attorneys involved or the precise nature of the allegedly incriminating information. The few facts which are known to the court will be discussed as they become relevant during the course of this opinion.

All parties agree that the Grievance Administrator's motion raises issues of first impression. The court must first determine whether disclosure to the Grievance Administrator by the Department of Justice Strike Force is authorized by the federal wiretap statute.[1] Second, the court must decide if the information sought constitutes matters occurring before a grand jury protected by the general rule of grand jury secrecy.[2] If so, the third issue before

the court is whether disclosure is permissible under the exception to the general rule of secrecy relied upon by the Grievance Administrator.[3] If not, the court must decide if disclosure is warranted by the "inherent power" doctrine recently recognized by the Eleventh Circuit.[4]

## I. Title III

■ Electronic surveillance is governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[5] All electronic surveillance not explicitly provided for in the Act is effectively prohibited.[6] The federal statutory scheme "has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized."[7]

Section 2517 of Title 18, U.S.C., authorizes disclosure and use of intercepted wire and oral communications under certain specified circumstances.[8] The Grievance Administrator relies upon subsection (1) of section 2517, which states:

Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.[9]

This subsection only authorizes disclosure to an "investigative or law enforcement

---

1. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20.

2. Fed.R.Crim.P. 6(e)(2).

3. Fed.R.Crim.P. 6(e)(3)(C)(i).

4. *In re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261 (11th Cir.1984).

5. 18 U.S.C. §§ 2510–20.

6. S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2113; *United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974).

7. S.Rep. No. 1097, *reprinted in* 1968 U.S.Code Cong. & Admin.News at 2153.

8. 18 U.S.C. § 2517.

9. 18 U.S.C. § 2517(1).

officer," which is defined under Title III to mean

any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses.[10]

This definition, therefore, raises the issue of whether the Grievance Administrator is "empowered by law to conduct investigations ... for offenses enumerated in this chapter...."[11]

Michigan General Court Rule 957.1 states that "[t]he Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys."[12] The Grievance Administrator is appointed by the Attorney Grievance Commission[13] and has the power and duty to "investigate alleged misconduct of attorneys, including serving a request for investigation in his own name."[14] Misconduct is defined to include "conduct that violates a criminal law of a state or of the United States."[15] The Grievance Administrator clearly seems to be an officer empowered to investigate the offenses enumerated in 18 U.S.C. § 2516 when those offenses are committed by members of the State Bar of Michigan. Under the disciplinary system established in Michigan, the Grievance Administrator's receipt and use of the electronic surveillance information would be appropriate to the proper performance of his official duties.[16]

■ This conclusion is in accord with Title III's broad purpose of encouraging cooperation between federal and state officers.[17] This broad view is reflected in the Ninth Circuit's decision in *United States v. Hall*, which held that section 2517(1) authorized disclosure to state officers of infor-

---

10. 18 U.S.C. § 2510(7).

11. 18 U.S.C. § 2516 enumerates the crimes for which interception of wire or oral communications is authorized. Although neither the court nor the Grievance Administrator knows the nature of the allegedly incriminating information which is the subject of the present motion, the respondents have not disputed the Grievance Administrator's assumption that the allegedly incriminating information concerns a crime enumerated in section 2516. The court's analysis is premised upon the truth of the fact assumed. If alleged wrongdoing of respondents is connected to any crimes not enumerated in section 2516, then disclosure is not authorized under section 2517(1). *See Scott v. United States*, 573 F.Supp. 622, 625 (M.D.Tenn.1983) (IRS agent not an "investigative or law enforcement officer" under 2510(7) because violation of Internal Revenue Code is not an offense enumerated in 18 U.S.C. § 2516).

12. This constitutional power of the Supreme Court to discipline attorneys is said to be granted by Mich. Const. art. 6, § 5, which states: "The Supreme Court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." *Matter of Hague*, 412 Mich. 532, 560, 315 N.W.2d 524 (1982). This constitutional power to discipline attorneys has been recognized since the earliest days of statehood. *See Matter of Mills*, 1 Mich. 392 (1850).

13. Mich.Gen.Ct.R. 957.4(1).

14. Mich.Gen.Ct.R. 958.1(5).

15. Mich.Gen.Ct.R. 953(5). "'Any lawyer knowingly engaging in criminally proscribed conduct can properly be charged with an awareness of the possible jeopardy in which such activity may place his professional status.'" *In the Matter of Grimes*, 414 Mich. 483, 492, 326 N.W.2d 380 (1982) (quoting *In the Matter of Rabideau*, 102 Wis.2d 16, 25, 306 N.W.2d 1 (1981)).

16. *See United States v. Hall*, 543 F.2d 1229, 1239 (9th Cir.1976) (*en banc*) (Koelsch, J., dissenting) ("[a] state officer may receive and use wiretap information only to the extent such receipt and use is appropriate to the proper performance of his official duties ... [and] the scope of a state officer's official duties is defined by state, not federal, law...."). *But see United States v. Hall, supra*, 543 F.2d at 1232–33 (majority opinion) (18 U.S.C. § 2517 authorizes disclosure of wiretap information to California state officers where state law prohibited wiretaps and excluded evidence derived therefrom).

17. S.Rep. No. 1097, *supra, reprinted in* 1968 U.S.Code Cong. & Admin.News at 2188 (§ 2517(1) "envisions close Federal, State and local cooperation" and "[t]he utilization of an information-sharing system within the law-enforcement community circumscribed by suitable safeguards for privacy....").

mation gleaned from electronic surveillance even though the state officers were prohibited by state law from engaging in electronic surveillance.[18] Although the Grievance Administrator seeks the information for disciplinary purposes rather than criminal prosecution, this is not a case where the conduct sought to be investigated in not also alleged to be criminal conduct for which electronic surveillance is authorized by section 2516.[19] The conduct sought to be investigated is alleged to be criminal conduct enumerated in section 2516. The court holds, therefore, that disclosure of the electronic surveillance information to the Grievance Administrator is authorized by 18 U.S.C. § 2517(1).

## II. Rule 6(e)—Grand Jury Secrecy

### A. Matters Occurring Before the Grand Jury

The general rule of grand jury secrecy applies to "matters occurring before the grand jury."[20] The information sought in the present motion is the fruit of an investigation commenced by the Justice Department Strike Force in approximately January 1982. Grand jury subpoenas were issued to obtain some technical data to allow the FBI to conduct the electronic surveillance. Electronic surveillance began on January 29, 1982, for a thirty day period. A second electronic surveillance order was issued February 25, 1982, for a thirty day period. The first electronic surveillance

was in Saginaw and Flushing. The second surveillance occurred in Ann Arbor. During the course of the surveillance, the FBI shared the fruits of the electronic surveillance with state law enforcement officers. The investigation continued into 1983 and several indictments issued, all of which went to litigation.

The electronic surveillance resulted in approximately 400 or 500 hours of intercepted conversations. A small portion of this material was played to a grand jury when the government sought indictments. The Grievance Administrator is seeking disclosure of approximately two hours of surveillance materials which were not played to any grand jury. That surveillance material consists of conversations between respondents and others.

The attorney for the United States argues that the fact that some technical information necessary to the surveillance was obtained by way of grand jury subpoena and the fact that a small portion of the intercepted communications was played to a grand jury do not make the whole 400 or 500 hours of surveillance constitute "matters occurring before a grand jury." The attorney for the government stated that the portions of the surveillance which were played to the grand jury became public when played at subsequent trials.

 The scope of grand jury secrecy is broader than a literal reading of Rule 6(e)

---

**18.** 543 F.2d 1229, 1232–22 (9th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). The Third Circuit has likewise taken a broad view and held that section 2517(1) authorizes disclosure by the Justice Department of electronic surveillance to Internal Revenue Service agents. *United States v. Iannelli,* 477 F.2d 999, 1001 (3d Cir.1973), *aff'd,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). A district court in this circuit recently has refused to follow *Iannelli* on the ground that an IRS agent is not an "investigative or law enforcement officer" as defined in § 2510(7) because violation of the Internal Revenue Code is not an offense enumerated in 18 U.S.C. § 2516. *Scott v. United States,* 573 F.Supp. 622, 625 (M.D.Tenn.1983). *See supra* note 11.

**19.** *Scott v. United States, supra* note 18. *See also American Friends Service Committee v.*

*Webster,* 720 F.2d 29, 73 (D.C.Cir.1983) (§ 2517(1) does not authorize disclosure of electronic surveillance by the FBI to the National Archives and Records Service because the latter is not "investigative or law enforcement officer" as defined in Title III).

**20.** Fed.R.Crim.P. 6(e)(2) states:

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

would imply. It can be said that Rule 6(e) applies to anything which may reveal what happened in the grand jury room.[21] If the information sought does not reveal anything about the grand jury proceedings, secrecy is unnecessary.[22] The mere fact that certain evidence is reviewed by a grand jury does not convert it into a "matter occurring before the grand jury" within the meaning of Rule 6(e).[23] The party objecting to production has the burden of proving that the policy of grand jury secrecy would be jeopardized so as to bring the request for production within the scope of Rule 6(e).[24]

 There are five reasons for the policy of grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of

crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.[25]

The first three reasons for secrecy do not apply where, as in this case, the grand jury has completed its investigation, and the fifth reason does not apply where the grand jury has returned an indictment.[26] Continued secrecy after the conclusion of the investigation, however, protects the reputations of the innocent, safeguards witnesses from possible retaliation, and encourages persons to testify fully and freely before future grand juries.[27]

 The court concludes that disclosure of the materials sought here will not implicate the reasons for secrecy which exist after the grand jury's investigation is ended. Disclosure of the electronic surveillance material to the Grievance Administrator will not disclose the identity of witnesses who testified before the grand jury. Even if the identities of the witnesses were disclosed to the Grievance Administrator, such disclosure would not subject the witnesses to possible retaliation or deter others from testifying before future grand

---

**21.** The scope of secrecy "encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'" *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 869 (D.C.Cir.1981) (quoting *Securities & Exchange Comm'n v. Dresser Industries, Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)).

**22.** *United States v. Stanford,* 589 F.2d 285, 291 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979).

Thus, when testimony or data is sought for its own sake—for its intrinsic value in furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same documents had been, or were presently being, examined by a grand jury.
*United States v. Interstate Dress Carriers,* 280 F.2d 52, 54 (2d Cir.1960).

**23.** *In Re Grand Jury Investigation,* 630 F.2d 996, 1000 (3d Cir.1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981).

**24.** *Id.,* 630 F.2d at 1001.

**25.** *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–986 n. 6, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir.1954)). *See also Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979).

**26.** *United States v. Moten,* 582 F.2d 654, 663 (2d Cir.1978); *State of Illinois v. Sarbaugh,* 552 F.2d 768, 775 (7th Cir.), *cert. denied,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); 1 C. Wright, *Federal Practice and Procedure: Criminal* § 106, at 244 (2d ed. 1982).

**27.** *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 103 S.Ct. 1356, 1361 n. 11, 75 L.Ed.2d 281 (1983).

juries. The risk of injury to the reputations of innocent persons is slight because the Grievance Administrator's investigation is confidential.[28] The fact that an attorney is suspected of wrongdoing is not made public until the Grievance Administrator files a formal complaint with the Attorney Discipline Board.[29]

The electronic surveillance materials sought by the Grievance Administrator were not presented to the grand jury. They are not, therefore, within the literal meaning of "matters occurring before the grand jury." Since disclosure would not implicate any of the reasons underlying the policy of grand jury secrecy, the court holds that the electronic surveillance materials sought by the Grievance Administrator are not governed by Rule 6(e).[30]

### B. Disclosure of Grand Jury Materials—Rule 6(e)(3)(C)(i)

Assuming that the electronic surveillance materials sought by the Grievance Admin-

istrator are protected by the rule of grand jury secrecy, the court would have to determine whether disclosure is authorized by the exceptions to the general rule which are embodied in Rule 6(e)(3).[31] The Grievance Administrator relies upon Rule 6(e)(3)(C)(i), which authorizes a court to order disclosure "preliminarily to or in connection with a judicial proceeding." The Grievance Administrator contends that attorney discipline proceedings are judicial proceedings so that disclosure would be preliminary to a judicial proceeding.[32]

The most frequently cited definition of "judicial proceeding" as used in Rule 6(e)(3)(C)(i) is contained in *Doe v. Rosenberry*, wherein Judge Learned Hand wrote that the term "judicial proceeding" includes

> any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the proce-

**28.** Mich.Gen.Ct.R. 975.1.

**29.** For a description of Michigan's attorney discipline system, see Dubin and Schwartz, *Survey and Analysis of Michigan's Disciplinary System for Lawyers,* 61 U.Det.J.Urb.L. 1 (1983).

**30.** One court has even held that electronic surveillance tapes which *were* played to a grand jury were not grand jury materials subject to the strictures of Rule 6(e). *United States v. Cianfrani,* 448 F.Supp. 1102, 1105 (E.D.Pa.), *rev'd on other grounds,* 573 F.2d 835 (3d Cir.1978).

**31.** Fed.R.Crim.P. 6(e)(3) states:

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
(i) an attorney for the government for use in the performance of such attorney's duty; and
(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.
(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce

federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been disclosed, with the names of the persons to whom such disclosure has been made.
(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;
(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury; or
(iii) when the disclosure is made by an attorney for the government to another federal grand jury.
If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

**32.** The Grievance Administrator cannot contend that disclosure would be "in connection with a judicial proceeding" because the "in connection with" language in (C)(i) refers to a judicial proceeding already pending, while "preliminarily to" refers to one not yet initiated. *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 3166, 77 L.Ed.2d 785 (1983).

dure applicable to the punishment of crime.[33]

At issue in *Doe v. Rosenberry* was whether Rule 6(e) authorized disclosure of grand jury testimony to the Grievance Committee of the New York City Bar Association. The Grievance Committee sought disclosure of the grand jury testimony for use in a hearing to determine whether to present a professional misconduct charge to the Appellate Division of the New York Supreme Court. The Second Circuit held that a disciplinary proceeding before the Appellate Division is a "judicial proceeding" within the meaning of Rule 6(e) and that the hearing of the Grievance Committee was "preliminary to" such judicial proceeding.[34]

In *In the Matter of Disclosure of Testimony Before the Grand Jury,* the Eighth Circuit approved disclosure of grand jury testimony to the Council for Discipline of the Nebraska State Bar Association.[35] The Eighth Circuit held that the procedures for disciplining attorneys were designed to culminate in a judicial proceeding as defined in *Doe v. Rosenberry* so that the request for disclosure to the Council on Discipline was "preliminary to or in connection with a judicial proceeding."[36] The Eighth Circuit noted that "the overall purpose of Rule 6(e), which provides for grand jury secrecy and limited disclosure exceptions, is 'to facilitate efficient adjudication for the protection of the public,'" and that the Council's investigation sought to protect the public's welfare.[37]

*Doe v. Rosenberry* was followed in *United States v. Sobotka,*[38] wherein the Grievance Committee of the Bar of the State of Connecticut sought disclosure of grand jury testimony for use in an attorney disciplinary proceeding. Citing *Doe v. Rosenberry,* the Second Circuit stated, "It is clear that the Committee's inquiry here is preliminary to or in connection with a judicial proceeding with Rule 6(e)."[39] The court held that the grand jury testimony could be disclosed upon a proper showing of compelling necessity.[40]

Attorney disciplinary proceedings have been characterized as judicial proceedings in other contexts as well. In *Erdmann v. Stevens,* the Second Circuit held that disciplinary proceedings in New York are judicial, rather than administrative, in nature.[41]

**33.** 255 F.2d 118, 120 (2d Cir.1958).

**34.** *Id. But see In re Holovachka,* 317 F.2d 834 (7th Cir.1963) (Rule 6(e) does not authorize disclosure of grand jury testimony for use in disbarment proceedings).

**35.** 580 F.2d 281 (8th Cir.1978).

**36.** 580 F.2d at 286. The procedures for attorney discipline in the State of Nebraska were summarized in the opinion of the district court:

The Counsel on Discipline of the Nebraska State Bar Association draws his authority from Article III of the Revised Rules of the Supreme Court of the State of Nebraska, 1974, as amended July 2, 1975. Those rules require him to investigate all allegations of misconduct of attorneys who are members of the Association. A series of steps leads, if the evidence warrants, from that investigation to a hearing before the Supreme Court of Nebraska, following which that court decides whether the attorney is guilty of misconduct and the discipline to be imposed.

*United States v. Salanitro,* 437 F.Supp. 240, 243 (D.Neb.1977), *aff'd,* 580 F.2d 281 (8th Cir.1978).

**37.** 580 F.2d at 287 (quoting *In re Special February 1971 Grand Jury v. Conlisk,* 490 F.2d 894, 898 (7th Cir.1973) (disclosure of grand jury testimony to police board of inquiry)).

**38.** 623 F.2d 764 (2d Cir.1980).

**39.** *Id.* at 766.

**40.** As discussed *infra,* a person seeking disclosure of matters occurring before the grand jury must establish not only that disclosure is authorized by one of the exceptions of Rule 6(e) but also that there is a "particularized need" to break the secrecy of the grand jury. *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 103 S.Ct. 1356, 1361, 75 L.Ed.2d 281 (1983); *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). The district court in *Sobotka* made no finding as to whether there was a particularized need; the Second Circuit remanded so the district court could make findings on this issue. 623 F.2d at 768–69.

**41.** 458 F.2d 1205, 1209 (2d Cir.), *cert. denied,* 419 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). The Second Circuit also held that disciplinary proceedings are criminal, rather than civil, in nature. *Id.* The Supreme Court has

The Second Circuit quoted Justice Frankfurter's description, in *Theard v. United States*,[42] of the nature of the relationship between the court and attorneys admitted to practice before it:

> "The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court. The matter was compendiously put by Mr. Justice Cardozo, while Chief Judge of the New York Court of Appeals. ' "Membership in the bar is a privilege burdened with conditions" (*Matter of Rouss*, 221 N.Y. 81, 84, 116 N.E. 782, 783). The appellant was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice.' *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470–471, 162 N.E. 487, 489." [43]

The Second Circuit then examined the particular procedures followed to discipline attorneys in New York and found them to be judicial in nature.[44]

The procedures for attorney discipline in Michigan can likewise be characterized as judicial in nature. The state constitution vests the Michigan Supreme Court with the power to discipline attorneys.[45] The Michigan Supreme Court has delegated its disciplinary authority to the Attorney Discipline Board.[46] A disciplinary proceeding is initiated by the filing of a complaint, called a "Request for Investigation," with the Grievance Administrator.[47] If warranted, the Grievance Administrator files a formal complaint with the Attorney Discipline Board.[48] The initial decision whether to discipline an attorney is made by a hearing panel appointed by the Attorney Discipline Board.[49] An aggrieved party may request that the Board review the hearing panel's decision.[50] The Board's decision may be reviewed only through leave to appeal to the Michigan Supreme Court.[51] The Michigan Supreme Court seldom grants leave to appeal the Board's decisions.

■ The Michigan Supreme Court views disciplinary proceedings in Michigan as "administrative and quasi-judicial in nature rather than primarily judicial." [52] Regardless of this definition, however, the Attorney Discipline Board exercises judicial power, so its determination may be considered a judicial proceeding under Rule 6(e)(3)(C)(i).[53] The court concludes, therefore, that disclosure of the electronic surveillance materials for the use contemplated by the Grievance Administrator is "preliminarily to or in connection with a judicial proceeding."

The court's inquiry does not end here, however. Even where the literal requirements of Rule 6(e) are met, the Supreme Court has imposed an additional require-

---

likewise characterized attorney disciplinary proceedings as "quasi-criminal proceedings." *In Re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968).

**42.** 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).

**43.** 458 F.2d at 1209 (quoting 354 U.S. at 281).

**44.** 458 F.2d at 1209.

**45.** *See supra* note 12.

**46.** Mich.Gen.Ct.R. 959.1 states: "The Attorney Discipline Board is the adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys."

**47.** Mich.Gen.Ct.R. 950(7), 961. The complaint need not be made by any particular person or entity; the Grievance Administrator has the au-

thority to serve a request for investigation in his own name, which presumably is the procedure contemplated by the Grievance Administrator in this case. *Id.* at 958.1(5).

**48.** Mich.Gen.Ct.R. 964.2.

**49.** Mich.Gen.Ct.R. 960.2(3).

**50.** Mich.Gen.Ct.R. 959.4(4), 967.1.

**51.** Mich.Gen.Ct.R. 971.1(a).

**52.** *State Bar Grievance Administrator v. Estes*, 390 Mich. 585, 592, 212 N.W.2d 903 (1973).

**53.** Comment, *The Michigan Attorney Discipline Board: Unconstitutional Delegation of Judicial Power*, 60 U.Det.J.Urb.L. 271, 279–81 (1983).

ment for disclosure.[54] In *United States v. Procter & Gamble Co.*, the Supreme Court stated: "Th[e] 'indispensable secrecy of grand jury proceedings,' ... must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the counterveiling policy. But they must be shown with particularity."[55] The Supreme Court has never wavered in requiring a showing of "particularized need" for disclosure of grand jury materials.[56] The Court has, however, indicated that "[i]t is equally clear that as the considerations justifying secrecy become loss relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."[57] The court has already found that the considerations of secrecy are diminished in this case.[58]

The court finds that the Grievance Administrator has made a particularized showing of compelling necessity. The Grievance Administrator has no other avenues of investigation because he does not even know the nature of the misconduct in which respondents have been implicated. The Grievance Administrator is not seeking disclosure as a means of avoiding investigation, but as a first step in the investigation.

Respondents contend that disclosure pursuant to Rule 6(e)(3)(C)(i) is precluded by the Supreme Court's decision in *United States v. Baggot*.[59] The Supreme Court held in *Baggot* that Rule 6(e)(3)(C)(i) does not authorize disclosure of grand jury testimony to IRS agents for use in an audit to determine a taxpayer's civil income tax lia-

bility. The Court found that the IRS audit was so far removed from any litigation that it could not be considered preliminary to a judicial proceeding.[60]

*Baggot* does not apply in this case. The Supreme Court indicated throughout the *Baggot* opinion that its holding was limited to the facts of the case. The Court, citing *Doe v. Rosenberry* as an example, expressly stated that it was not deciding whether other types of investigations can be considered preliminary to a judicial proceedings.[61] This court concludes that *Baggot* leaves intact the analysis under in cases such as *Doe v. Rosenberry, Sobotka*, and *In the Matter of Disclosure of Testimony Before the Grand Jury*. An IRS audit to determine civil tax liability is clearly an administrative proceeding whereas an attorney disciplinary proceeding before the Attorney Grievance Board is itself a judicial proceeding.

For these reasons, the court holds that disclosure of the electronic surveillance materials to the Grievance Administrator does not violate Rule 6(e).

## C. Inherent Supervisory Powers Over Grand Jury Matters

Because of the conclusions reached above, the court need not decide whether to order disclosure pursuant to its inherent supervisory powers over grand jury matters. The Eleventh Circuit recently recognized such inherent powers and relied upon such powers as justifying disclosure of grand jury materials to the Investigating Committee of the Judicial Council of the Eleventh Circuit, which was investigating a

---

**54.** *United States v. Sobotka*, 623 F.2d at 767; *In The Matter of Disclosure of Testimony Before the Grand Jury*, 580 F.2d at 286.

**55.** 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)).

**56.** *See Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 103 S.Ct. 1356, 1361, 75 L.Ed.2d 281 (1983); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221–24, 99 S.Ct. 1667, 1674–75, 60 L.Ed.2d 156 (1979); *Pittsburgh Plate Glass*

*Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959).

**57.** *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 223, 99 S.Ct. at 1675.

**58.** *See supra* text accompanying notes 25–29.

**59.** 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983).

**60.** 103 S.Ct. at 3167.

**61.** 103 S.Ct. at 3166 n. 2, 3168 n. 6.

federal judge acquitted of criminal charges.[62] The Eleventh Circuit resorted to the inherent powers doctrine in that case only because disclosure was not authorized by Rule 6(e).[63] Furthermore, the trial court in *Baggot* had found that disclosure was authorized under the inherent power doctrine, but the Supreme Court held that disclosure was improper because not authorized by Rule 6(e).[64] *Baggot*, therefore, implies that the exceptions in Rule 6(e) are the only authority for disclosure of grand jury materials and that disclosure is improper where not explicitly authorized by Rule 6(e). In light of *Baggot*, the Eleventh Circuit's reliance on the inherent powers doctrine is suspect.

### III. Conclusion

For the reasons set forth herein, the motion of the Grievance Administrator for disclosure of certain electronic surveillance materials held by the Detroit Strike Force will be granted. An appropriate order shall be submitted.

---

**62.** *In Re Petition to Inspect and Copy Grand Jury Materials,* 735 F.2d 1261 (11th Cir.1983).

**63.** *Id.* at 1267–68.

**64.** 103 S.Ct. at 3166, 3169.