# Disclosure of Grand Jury Matters to the President and Other Officials

The Attorney General may disclose grand jury material covered by Rule 6(e) of the Federal Rules of Criminal Procedure to the President and members of the National Security Council where such disclosure is for the purpose of assisting the Attorney General in her enforcement of federal criminal law. Although under those circumstances such disclosure may be made without prior judicial approval, the names of those receiving the grand jury material must be submitted to the court that impaneled the grand jury in question

There are also circumstances where the President's constitutional responsibilities may provide justification for the Attorney General to disclose grand jury matters to the President independent of the provisions of Rule 6(e). Such circumstances might arise, for example, where the Attorney General learns through grand jury proceedings of a grave threat of terrorism, implicating the President's responsibilities under Article II of the Constitution.

September 21, 1993

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum responds to your request for our legal opinion on the question of whether, and under what circumstances or conditions, the Attorney General may disclose grand jury material covered by Rule 6(e) of the Federal Rules of Criminal Procedure in briefings presented to the President and other members of the National Security Council ("NSC").

We conclude that the Attorney General may disclose Rule 6(e) materials to the President or to other NSC members where such disclosure is for the purpose of assisting the Attorney General in her enforcement of federal criminal law. Disclosures satisfying this "criminal law enforcement purpose" standard may be made without prior court approval or a showing of particularized need, but the names of those who received the information must be supplied to the district court that impaneled the grand jury. Fed. R. Crim. P. 6(e)(3)(A), (B). Subject to obtaining prior court approval based on a showing of particularized need, the Attorney General may also make such disclosures "[for] uses related fairly directly to some identifiable litigation, pending or anticipated." *United States v. Baggot*, 463 U.S. 476, 480 (1983); *see also* Fed. R. Crim. P. 6(e)(3)(C)(i). These court-approved disclosures may be made for the purpose of gaining assistance in *civil* as well as criminal litigation. We do not believe that any of the 6(e) exceptions would apply to disclosures made to the President or NSC officials for general policymaking purposes, as opposed to obtaining the assistance of those officials for law enforcement purposes.

59

We also believe, however, that the President's ultimate responsibility to supervise the executive branch, and in particular his duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, may sometimes provide a constitutional justification for the Attorney General to disclose grand jury matters to the President *independent* of the Rule 6(e) exceptions. Disclosures of this nature would be supported by basic separation of powers principles where, for instance, the President has a special need for such information in order to exercise necessary supervision over the Attorney General's law enforcement functions in matters of unusual national significance. Inasmuch as the courts have not directly addressed the extent of the President's Article II power in this particular context, any disclosures of grand jury material made on the basis of that power alone should be undertaken with caution. Judicial sanction for such disclosures might be obtained by invoking the court's inherent supervisory authority to approve disclosures of grand jury materials not otherwise covered by one of the Rule 6(e) exceptions in appropriate circumstances.

## I. *Disclosures under Rule 6(e)*

Rule 6(e)(2) of the Federal Rules of Criminal Procedure establishes a "General Rule of Secrecy" providing that certain persons, including attorneys for the Government[1], "shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." *See United States v. John Doe, Inc. I*, 481 U.S. 102, 107 (1987). Under this rule, no attorney for the Department of Justice may disclose "matters occurring before the grand jury" to any other person, unless one of the rule's enumerated exceptions applies. The specified exceptions are set forth under subparagraph (3) of Rule 6(e) and may be summarized as follows:

(1) Disclosure to an attorney for the government for use in the performance of that attorney's duties. (Exception (A)(i));

(2) Disclosure to such government personnel as are deemed necessary to assist an attorney for the government in the performance of his duty to enforce federal criminal law. (Exception (A)(ii));

(3) Disclosure directed by a court preliminary to or in connection with a judicial proceeding. (Exception (C)(i));

(4) Disclosure at the request of a defendant and approved by a court "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." (Exception (C)(ii));

(5) Disclosures made by an attorney for the government to another federal grand jury. (Exception (C)(iii)); and

(6) Disclosures to state or local law enforcement officials permitted by the court at the request of any attorney for the government for purposes of aiding prosecu-

---

[1] For purposes of Rule 6(e), the Attorney General is an "attorney for the government." Fed R Crim P. 54(c); *see United States v Bates*, 627 F.2d 349, 351 (D C. Cir. 1980).

tion of violations of state or local law that may be brought forth before the grand jury. (Exception (C)(iv)).

## A. *Subsection (A): Self-executing Exceptions*

Rule 6(e)(3)(A) sets forth the exceptions to nondisclosure of grand jury matters which may be exercised without prior judicial approval or a showing of particularized need. It provides as follows:

> (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to —
>
> (i) an attorney for the government for use in the performance of such attorney's duty; and
>
> (ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government *to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.*

*Id.* (emphasis added).

The (A)(i) exception clearly would not apply to disclosures to the President or members of the NSC.[2] However, the (A)(ii) "government personnel" exception could apply to such disclosures in circumstances where they are made for the purpose of obtaining the assistance of the President or NSC members in enforcing federal criminal law.

Although the (A)(ii) exception was primarily designed to allow disclosures to lesser-ranking officials or agents assisting a prosecutor in a particular case, there is no persuasive reason why the Attorney General cannot make such disclosures to the President or to other senior Administration officials (who do constitute "government personnel") for purposes of obtaining their assistance in carrying out federal criminal law enforcement responsibilities. One plausible example of such a situation might be the grand jury investigating the terrorist attack on the World Trade Center. In such a case, it is possible that the Attorney General's direction and supervision of the case could be facilitated by discussing developments (including developments brought forth before the grand jury) with the President and NSC members such as the Secretary of State. However, disclosure of such

---

[2] Although the President and some members of the NSC are attorneys, they are not "attorneys for the government" in the sense in which that term is used in Rule 6(e)

grand jury materials could not be made under the (A)(ii) exception for mere purposes of general policymaking.

While we find no case authority specifically addressing (A)(ii) disclosures to the President or senior government officials at the Cabinet level, we believe the language of the subsection, its legislative history, and judicial opinions interpreting it are compatible with such disclosures under the limitations noted.

The text of the (A)(ii) exception on its face allows for disclosures to the President or to NSC officials in circumstances where the Attorney General (in her capacity as "an attorney for the government") deems such disclosures necessary to obtain the assistance of such officials in the performance of her duties to enforce federal criminal law. In this regard, there is no persuasive reason why the term "government personnel" as used in subparagraph (A)(ii) should be narrowly construed to exclude the President or Cabinet-level officials.

The (A)(ii) "government personnel" exception was enacted in 1977. Act of July 30, 1977, Pub. L. No. 95-78, § 2(a), 91 Stat. 319, 319. The Senate Report on the 1977 amendment explained its origins and purpose as follows:

> The Rule as redrafted is designed to accommodate the belief . . . that Federal prosecutors should be able, without the time-consuming requirement of prior judicial interposition, to make such disclosures of grand jury information *to other government personnel as they deem necessary to facilitate the performance of their duties relating to criminal law enforcement.*

S. Rep. No. 95-354, at 8 (1977), *reprinted in* 1977 U.S.C.C.A.N. 527, 531 ("1977 Senate Report") (emphasis added). The Report's use of the permissive phrase "as they deem necessary" strongly supports the view that Congress intended federal prosecutors to have broad leeway in deciding what government personnel should have access to grand jury materials for purposes of facilitating enforcement functions.

Assessing this legislative history of the (A)(ii) exception in *In re Perlin*, 589 F.2d 260 (7th Cir. 1978), the Seventh Circuit stated:

> [T]he history of the amendments of rule 6(e) . . . clearly indicates the continuing Congressional support for inter-agency cooperation and the active participation of agency personnel, including agency attorneys, in grand jury proceedings.

*Id.* at 267.

The Supreme Court's opinion in *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), provides further insight regarding the intended scope of the (A)(ii) exception. *Sells* held that attorneys in the Civil Division of the Department

of Justice could not obtain automatic direct disclosure of grand jury materials from Department prosecutors under the (A)*(i)* exception where the purpose of the disclosure was for use in civil suits as opposed to criminal law enforcement. Under those circumstances, the Court held that the Civil Division attorneys must instead apply for court-approved disclosure under the (C)(i) exception applicable to matters related to both civil and criminal judicial proceedings. In the course of its opinion, however, the Court emphasized the sharp distinction between the automatic subsection (A) exceptions applicable to *criminal* law enforcement and the more restrictive, court-approved subsection (C) exceptions applicable in the civil context. Referring to materials in the 1977 Senate Report, quoted above, the Court said that they

> reflect[] the distinction the Senate Committee had in mind: "*Federal prosecutors*" *are given a free hand concerning use of grand jury materials, at least pursuant to their "duties relating to criminal law enforcement*"; but disclosure of "grand jury-developed evidence for civil law enforcement purposes" requires a (C)(i) court order.

*Id.* at 441-42 (emphasis added).

Other opinions also suggest a relatively expansive interpretation of the "government personnel" exemption. In *United States v. Cook*, 794 F.2d 561 (10th Cir.), *cert. denied*, 479 U.S. 889 (1986), the court upheld applicability of the (A)(ii) exception to disclosures to two state police officers who were deputized as Special Deputy U.S. Marshals to assist in an investigation of illegal drug activities. The court stressed that the officers "were needed to aid in the investigation and that the disclosures were necessary to effective aid" and held that they should be "included within even the most restrictive definition" of the government personnel exemption. *Id.* at 565; *see also United States v. Kilpatrick*, 821 F.2d 1456, 1471 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ("Federal employees assisting the prosecutor in the investigation and prosecution of federal criminal violations are permitted access to grand jury materials without prior court permission. However, such support personnel may not use the material except for purposes of assisting Government attorneys to enforce federal criminal laws."); *United States v. Claiborne*, 765 F.2d 784, 795 (9th Cir. 1985), *cert. denied*, 475 U.S. 1120 (1986) (holding that (A)(ii) authorizes disclosure to federal officials who assist the prosecution in collecting evidence for a case).

These cases demonstrate that the category of "government personnel" to whom disclosures may be made should not be narrowly construed. We therefore see no reason to conclude that the President and other officials of the NSC could not qualify as "government personnel" for purposes of this exemption. Rather, the key factor in determining the applicability of this exemption to disclosures of the kind

proposed is the extent to which the disclosure is limited to the purpose of obtaining the assistance of the President and other officials in the Attorney General's *criminal* law enforcement activities. *See Sells*, 463 U.S. at 442. If disclosures are confined to that purpose, they should qualify for coverage under the (A)(ii) exception.

If the Attorney General does rely upon the (A)(ii) exception to disclose grand jury material without prior court approval in this context, a list naming all the officials to whom such disclosures are made must be submitted to the district court that empaneled the grand jury. Fed. R. Crim. P. 6(e)(3)(B). While the rule does not explicitly require submission of the list of names *before* the disclosure is made, it has been held that submission of the names should ordinarily be made prior to disclosure of the materials. *United States v. Hogan*, 489 F. Supp. 1035, 1038 (W.D. Wash. 1980) (citing the 1977 Senate Report at 8, where it was stated, "[a]lthough not expressly required by the rule, the Committee contemplates that the names of such personnel will generally be furnished to the court before disclosure is made to them"). We believe that, when practicable, the list of names should be submitted prior to the disclosures.

## B. *Subsection (B): Exceptions Requiring Court Approval*

Subsection 6(e)(3)(C) of the rule sets forth four additional exceptions from its general ban on disclosure of grand jury materials. The only one of these exceptions relevant to the question posed is the (C)(i) exception, which provides:

> (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made —
>
> > (i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

This exception has been narrowly interpreted by the Supreme Court. In *United States v. Baggot*, 463 U.S. at 480, the Court held that the (C)(i) exception did not provide a basis for disclosing grand jury material to agents of the Internal Revenue Service ("IRS") for purposes of conducting an audit to determine the erstwhile grand jury target's civil tax liability. The Court first noted that disclosure under (C)(i) can only be justified where there is a "particularized need" for access to the materials and where that need is related to a judicial proceeding. The Court then elaborated upon the latter prerequisite:

> It reflects a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy. Rather, the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or

anticipated . . . . If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under (C)(i) is not permitted.

*Id.*

The *Baggot* Court's restrictive interpretation confines the (C)(i) exception to disclosures that are closely and directly related to some identifiable litigation. However, to the extent that disclosures of the kind described by the Attorney General could satisfy that standard, there is no apparent reason why this exception would not extend to such disclosures. The primary practical value of the (C)(i) exception in this context is that it permits disclosures that are related to *civil* judicial proceedings as well as criminal.

Prior judicial approval for (C)(i) disclosures must be obtained by filing a petition with the district court where the grand jury convened. Fed. R. Crim. P. 6(e)(3)(D). When the government is the petitioner, ex parte hearings are authorized. *Id.* If the court approves the petition, the court specifies the manner, time, and conditions of the disclosure. *Id.* 6(e)(3)(C).

## II. *Disclosures to President under Article II*

Apart from the enumerated exceptions from Rule 6(e)'s prohibition against disclosure of grand jury material, we believe that the Attorney General's disclosures of such materials to the President could in some circumstances be authorized on broader constitutional grounds. As the repository of all executive power in the national government, the President is charged with the duty to "take Care that the Laws be faithfully executed." U.S. Const., art. II, §§ 1, 3. Accordingly, there may be circumstances in which his constitutional responsibilities entitle the President to obtain disclosure of grand jury information that has already been made available to the Attorney General, even where that disclosure might not be specifically authorized by one of the exceptions under Rule 6(e).

In a brief memorandum prepared to provide responses to Watergate-related press inquiries in 1973, this Office opined that it "is not altogether clear" whether the President may obtain access to the transcript of a federal grand jury investigation.[3] The memorandum first advised that the restrictive language of Rule 6(e) "seemingly precludes the disclosure of [matters occurring before the grand jury] to the President because he is not a member of the group specifically authorized to obtain this information." *Id.* at 1. This aspect of the memorandum may be attributed to the fact that the (A)(ii) exception for "government personnel" had not yet been incorporated in the rule at the time the opinion was written. However, the

---

[3] Memorandum for Horace Webb, Acting Director, Public Information Office, from Robert G. Dixon, Assistant Attorney General, Office of Legal Counsel, *Re. Questions from the Press on the Watergate Investigation* (Apr. 30, 1973)

memorandum went on to state, "it can be argued that the President by virtue of his responsibility in administering the executive branch is authorized to obtain the transcripts of testimony before a grand jury." *Id.* Stressing that all executive power is vested in the President, and his particular obligation to take care that the laws be faithfully executed, U.S. Const. art. II, §§ 1, 3, the memorandum stated:

> [T]hat power which is vested in the Attorney General to supervise all litigation empowers the President to supervise the litigation and to perform any functions incidental thereto because the power of the Attorney General is a residue of the more general power vested in the President by the Constitution. *See also* 7 Op. A.G. 453 (1855) (the heads of all Departments are subject to the direction of the President).

*Id.* at 2. The memorandum added that its opinion on this question was "purely hypothetical" because the President had ordered that no transcripts of testimony before the Watergate grand jury were to be sent to the White House. *Id.*

A memorandum opinion prepared for the President by Attorney General Griffin Bell in 1977 provides additional pertinent insight regarding the President's constitutional authority in working with the Attorney General. *Proposals Regarding an Independent Attorney General,* 1 Op. O.L.C. 75 (1977). That opinion expressed "serious doubts" as to the constitutionality of certain proposed legislation providing that the Attorney General should be appointed for a definite term and removable from office only for cause or malfeasance. The opinion placed great stress on the President's constitutional responsibility as Chief Executive to supervise the law enforcement functions of the Attorney General, stating:

> Indeed, the President must be held accountable for the actions of the executive branch; to accomplish this he must be free to establish policy and define priorities. Because laws are not self-executing, their enforcement obviously cannot be separated from policy considerations. The Constitution contemplates that the Attorney General should be subject to policy direction from the President. As stated by the Supreme Court: "The Attorney General is . . . the hand of the President in taking care that the laws of the United States . . . be faithfully executed." *Ponzi v. Fessenden,* 258 U.S. 254, 262 (1922). Removing the Attorney General from the President's control would make him unaccountable to the President, who is constitutionally responsible for his actions.

*Id.* at 76; *see also Myers v. United States,* 272 U.S. 52, 133 (1926) (stressing that "[e]ach head of a department is and must be the President's *alter ego* in the matters of that department where the President is required by law to exercise authority").

The foregoing Attorney General's opinion focused on the President's supervisory authority over the Attorney General in the context of the removal power. The constitutional principles it invoked are nevertheless pertinent to the President's ability to obtain information needed to discharge his responsibilities relative to the Attorney General's functions and to "take care that the laws are faithfully executed." In some circumstances, we believe that the President's Article II responsibilities in this area may independently justify the Attorney General's disclosure to him of pertinent grand jury information. A prime example of such circumstances might be a grand jury investigation of major international terrorist activity in the United States, involving a threat to domestic peace and national security. In such a case, the President should be able to share grand jury information legitimately possessed by the Attorney General in order to aid the President's handling of the overall law enforcement crisis. Similarly, presidential access to such grand jury information would also appear justified under the removal power, *see Myers,* in a case where, for example, the integrity or loyalty of a presidential appointee holding an important and sensitive post was implicated in the grand jury investigation.

Although we find no opinions directly addressing this issue, several cases suggest that the constitutional duties of the respective branches may provide independent support for their access to grand jury information. In *Matter of Grand Jury Subpoena of Rochon,* 873 F.2d 170, 174 (7th Cir. 1989), the court observed as follows in reversing a district court order disqualifying the Attorney General from participating in a grand jury investigation on alleged conflict of interest grounds:

> [A] federal district court order prohibiting the Attorney General of the United States from participating in a grand jury investigation is no small matter, even if the investigation could continue in his absence. Since initiating a criminal case by presenting evidence before the grand jury is "'an executive function within the exclusive prerogative of the Attorney General,'" *United States v. Chanen,* 549 F.2d 1306, 1312-13 (9th Cir.) (quoting *In re Persico,* 522 F.2d 41, 54-55 (2d Cir. 1975)), *cert. denied,* 434 U.S. 825, 98 S. Ct. 72, 54 L.Ed.2d 83 (1977), such an order raises sharp separation-of-powers concerns. As the Ninth Circuit has stated, although the "'grand jury is subject to a supervisory power in the courts, aimed at preventing abuses of its processes or authority,'" *id.* at 1313 (quoting 1 Wright, Federal Practice and Procedure § 101, at p. 151 (1969)), "the separation-of-powers principle imposes significant limits on it."

*Id.* (quoting *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985)).

Two lower court decisions of note have upheld *congressional* access to grand jury materials in aid of that branch's constitutional power of impeachment. In *Grand Jury Proceedings of Grand Jury No. 81-1*, 669 F. Supp. 1072, 1074-75 (S.D. Fla.), *aff'd*, 833 F.2d 1438 (11th Cir. 1987), the court held that the House Judiciary Committee was entitled to receive the record of grand jury proceedings in furtherance of its impeachment investigation of Judge Alcee Hastings. Although the committee's access to the materials was separately justified on the basis of Fed. R. Crim. P. 6(e)(3)(C)(i), the court held that the disclosure was also justified on the basis of, inter alia, the Impeachment Clause. U.S. Const. art. I, § 2; *see also In re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F. Supp. 1219 (D.D.C.), *mandamus denied sub nom. Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974) (district court's decision granting the Watergate grand jury's request that its report on the matters it investigated be submitted to the House Judiciary Committee, upheld by court of appeals in denying mandamus relief).

These decisions should be read with some caution because the disclosures of the grand jury materials at issue were directly related to impeachment proceedings — which have been viewed as within the coverage of the Rule 6(e)(3)(C)(i) exception — and were undertaken only after obtaining prior judicial approval. Nonetheless, they demonstrate the courts' willingness to recognize an independent constitutional basis for disclosures of grand jury information outside the provisions of Rule 6(e). Thus, if congressional access to grand jury materials may be independently justified on the basis of its Article I power, it would be anomalous to contend that presidential access to such materials could not be justified on the basis of the President's Article II powers.

In the absence of judicial precedent on this point, however, any disclosure of grand jury matter to the President on this basis should be cautiously undertaken and reserved for matters of clear executive prerogative in areas where the Rule 6(e)(3)(A)(ii) exception could not be used. Because such disclosures would be based on the President's inherent constitutional powers rather than Rule 6(e), the rule's various procedural requirements would not be applicable. Nonetheless, the risk of constitutional confrontation could be minimized by seeking the approval of the district court that impaneled the grand jury, invoking the court's inherent authority to disclose grand jury materials for reasons other than those specified in Rule 6(e).

A federal court's "inherent" power to authorize disclosure of grand jury matters outside the parameters of Rule 6(e) was recognized by the Eleventh Circuit in *In re Petition*, 735 F.2d 1261, 1268 (11th Cir.), *cert. denied*, 469 U.S. 884 (1984). At issue was whether the Judicial Council of the Eleventh Circuit could have access to records of a federal grand jury in connection with the Council's investigation of Judge Alcee Hastings under the Judicial Councils Reform and Disability Act, 28 U.S.C. § 372. The court recognized that none of the Rule 6(e) exceptions applied

to the request, although it noted that the investigation in question was "very similar" to the "judicial proceedings" covered by the Rule 6(e)(3)(C)(i) exception. Nonetheless, the Eleventh Circuit affirmed the district court's holding that Rule 6(e) did not preclude it "from fashioning an alternate method for disclosure under its general supervisory authority over grand jury proceedings and records." 735 F.2d at 1267-68.[4] As the court explained the inherent power doctrine:

> [I]t has been authoritatively said that [Rule 6(e)] is not the true source of the district court's power with respect to grand jury records but rather is a codification of standards pertaining to the scope of the power entrusted to the discretion of the district court.

*Id.* at 1268. After citing examples of how the courts have influenced the development of Rule 6(e) through the exercise of their "inherent power" over grand jury materials, the court stated:

> These examples from the history of Rule 6(e) indicate that the exceptions permitting disclosure were not intended to ossify the law, but rather are subject to development by the courts in conformance with the rule's general rule of secrecy.

*Id.* at 1269. The court concluded that "it is certain that a court's power to order disclosure of grand jury records is not strictly confined to instances spelled out in the rule," *id.* at 1268, but it stressed that the courts can only order disclosure outside the rule in "exceptional circumstances consonant with the rule's policy and spirit." *Id.* at 1269.

Although the Eleventh Circuit's "inherent power" doctrine has not been widely cited by the courts in published opinions, it does provide one recognized framework for seeking judicial approval of disclosures of grand jury material to the President based on constitutional authority rather than on Rule 6(e).

WALTER DELLINGER
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[4] The Eleventh Circuit's holding on this issue has been criticized in one district court decision In *Matter of Electronic Surveillance*, 596 F. Supp. 991, 1001 (E D Mich 1984), the court asserted that the "Eleventh Circuit's reliance on the inherent powers doctrine is suspect." In support of this position, the district court contended that the Supreme Court's decision in *United States v. Baggot* 463 U S. 476 (1983) had implicitly rejected extra-Rule 6(e) disclosures because the trial court in *Baggot* had found that disclosure was authorized under the inherent powers doctrine, but the Supreme Court had held against disclosure because the standards of Rule 6(e)(3)(C)(1) had not been satisfied. We do not read the *Baggot* decision as taking any position, one way or the other, on the inherent powers doctrine because, as the Court noted, certiorari there was limited to the narrow question of whether an IRS civil tax audit is "preliminar[y] to or in connection with a judicial proceeding ' under the (C)(i) exception *Id* at 478 (alteration in original)